[No. S089226. July 2, 2001.]

NICHOLAS F. COSCIA, Plaintiff and Appellant, v.
McKENNA & CUNEO, et al., Defendants and Respondents.

## COUNSEL

Nicholas F. Coscia, in pro. per.; Milberg & De Phillips, Russell M. De Phillips and Roy L. Carlson, Jr., for Plaintiff and Appellant.

Gene Moran as Amicus Curiae on behalf of Plaintiff and Appellant.

Hinshaw & Culbertson, Ronald E. Mallen, Paul E. Vallone; McKenna & Cuneo, Michael H. Fish and Ross H. Hyslop for Defendants and Respondents.

Hartley & Hartley, Joseph M. Hartley and Mary Kathleen Hartley as Amici Curiae on behalf of Defendants and Respondents.

Cooley Godward, Jeffrey G. Randall, Patrick C. Pope and Andrew C. Temkin as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**GEORGE, C. J.**—In *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983], this court held that when a former criminal defendant sues his or her attorney for legal malpractice, the former client's actual innocence of the underlying criminal charges is a necessary element of the malpractice cause of action. We granted review in this matter to address a distinct, but related, question—whether a former criminal defendant must obtain exoneration by postconviction relief as a prerequisite to obtaining relief for legal malpractice. As we shall explain, we conclude

that postconviction exoneration is a prerequisite to prevailing on a legal malpractice claim in this context.

I

In October 1993, plaintiff Nicholas F. Coscia, an attorney, was indicted by the federal government for securities fraud and related offenses. He retained defendants McKenna & Cuneo, L.L.P., and Juanita R. Brooks (hereafter sometimes McKenna & Cuneo) to represent him.

In December 1994, Coscia pleaded guilty in the United States District Court for the District of Nevada to one felony count of conspiracy to violate federal securities laws. He admitted his guilt under oath and confirmed that his plea and his waiver of certain constitutional rights were made freely and voluntarily. He answered affirmatively in response to the court's question whether he "in fact knowingly participate[d] in the conspiracy charged." At the court's request, he summarized his role with regard to the conspiracy by admitting that, with the intent of obtaining financial profit, he purchased securities of the subject corporation knowing that there would be a corporate reorganization of that entity. He also signed a statement of offense acknowledging his criminal conduct.

In March 1996, Coscia was sentenced to two years' probation and a $5,000 fine.

In March 1997, Coscia commenced the present malpractice action against McKenna & Cuneo, alleging that he was injured by the firm's negligent legal advice. McKenna & Cuneo demurred on the grounds that the action was barred by the statute of limitations and by collateral estoppel. The superior court sustained the demurrer without leave to amend, concluding that Coscia's criminal conviction precluded relief in the present action under principles of collateral estoppel. The court entered judgment in favor of McKenna & Cuneo.

Coscia appealed from the judgment. He contended that the trial court should have permitted him to amend the complaint to allege that he had entered into a plea agreement despite his innocence of the criminal charges. Coscia asserted that he would allege the following facts. During the plea negotiations, he approached Attorney Brooks and informed her that he possessed information regarding another ongoing securities fraud, and that he would like to "trade" this information to the government in exchange for the prosecutor's agreement to a misdemeanor plea. Brooks advised Coscia not to do so, stating that in her opinion it would not be "worth her time" to present such facts to the federal prosecutor. Relying upon that advice, Coscia accepted the felony plea offer. As a consequence of the plea, he suffered economic and emotional damage, including suspension of his license to

practice law in California. Coscia subsequently was informed, in meetings with a United States Attorney and an FBI agent, that it was a mistake for his attorney not to have presented the offer of information in the plea negotiations, and that favorable deals are struck "all the time" on that basis.

The Court of Appeal reversed the judgment of the superior court. It noted that a majority of out-of-state courts addressing the point have held that, in addition to proof of innocence, a further requirement in a criminal malpractice action is that the conviction have been set aside through appeal or other postconviction proceeding. The Court of Appeal determined, however, that it was precluded from adopting the majority rule, regardless of its substantive merits, because in California the application of such a rule would render most criminal malpractice actions untimely under Code of Civil Procedure section 340.6. Because of the effect of the statute of limitations, the Court of Appeal suggested that the propriety of a postconviction relief requirement in criminal malpractice actions may be determined only by this court or the Legislature. Citing *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], the court concluded that a plaintiff in a criminal malpractice action who pleaded guilty to the underlying offense is not collaterally estopped from proving actual innocence. Because there was a reasonable possibility that Coscia could have cured the defects in his complaint, the Court of Appeal concluded that the superior court should have granted him leave to amend. Accordingly, it reversed the judgment of the superior court and remanded the matter for further proceedings consistent with its opinion.

We granted review. As will appear, we determine, contrary to the Court of Appeal, that exoneration by postconviction relief is a prerequisite to recovery for legal malpractice arising out of a criminal proceeding, but we nonetheless conclude that the matter should be remanded to the trial court for further proceedings consistent with this opinion.

## II

The failure to provide competent representation in a civil or criminal case may be the basis for civil liability under a theory of professional negligence. In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Schultz v. Harney* (1994) 27

Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276].) In a legal malpractice case arising out of a criminal proceeding, California, like most jurisdictions, also requires proof of actual innocence. (*Wiley v. County of San Diego, supra,* 19 Cal.4th at p. 545.)

■ Our decision in *Wiley* explained that the addition of an actual innocence requirement was required by several public policy considerations. (*Wiley v. County of San Diego, supra,* 19 Cal.4th 532.) First, " ' "[p]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." ' " (*Id.* at p. 537.)

Second, " 'allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict.' " (*Wiley v. County of San Diego, supra,* 19 Cal.4th at p. 537.) A plaintiff convicted of an offense should bear sole responsibility for the consequences of his or her criminal acts; " '[a]ny subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. [Citation.]' [Citation.]" (*Id.* at p. 538.) "The fact that nonnegligent counsel 'could have done better' may warrant postconviction relief, but it does not translate into civil damages, which are intended to make the plaintiff whole." (*Id.* at p. 539.) "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss. [Citation.]" (*Ibid.*)

Third, guilty defendants have an adequate remedy in the form of postconviction relief for ineffective assistance of counsel. (*Wiley v. County of San Diego, supra,* 19 Cal.4th at pp. 542-543.) "Not only does the [United States] Constitution guarantee this right [under the Sixth Amendment], any lapse can be rectified through an array of postconviction remedies, including appeal and habeas corpus." (*Id.* at p. 542.) Moreover, avoiding a procedure that would involve retrying criminal prosecutions in tort actions for malpractice is consistent with " ' "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' [Citation.]" (*Id.* at p. 544.)

*Wiley* noted that many jurisdictions that require proof of actual innocence as an element of criminal malpractice also require that " 'the person's conviction has been reversed, . . . on appeal or through post-conviction relief, or the person has otherwise been exonerated.' [Citations.]" (*Wiley v. County of San Diego, supra,* 19 Cal.4th at p. 536, fn. 2.) Indeed, the Court of

Appeal in *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 48 [170 Cal.Rptr. 533], implicitly imposed such a requirement, holding that the doctrine of collateral estoppel precludes relitigation of guilt in a malpractice action when the plaintiff remains convicted on charges of federal securities law violations. (*Wiley v. County of San Diego, supra,* 19 Cal.4th at pp. 536-537, fn. 2; see also *id.* at p. 549 (dis. opn. of Mosk, J.) ["[S]ince *Weiner v. Mitchell, Silberberg & Knupp*[, *supra,*] 114 Cal.App.3d 39 . . . , it has been the rule in the state that a criminal defendant must obtain postconviction relief before pursuing a malpractice action."].)[1]

 Because we had no occasion in *Wiley* to do so, however, we did not address the question whether exoneration by postconviction relief is required before a plaintiff in a criminal malpractice action can prove actual innocence.

That issue now is presented, and for the reasons cited in *Wiley* and the additional reasons set forth below, we hold that an individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief, in order to establish actual innocence in a criminal malpractice action. As discussed, public policy considerations require that only an innocent person wrongly convicted be deemed to have suffered a legally compensable harm. Unless a person convicted of a criminal offense is successful in obtaining postconviction relief, the policies reviewed in *Wiley* preclude recovery in a legal malpractice action.

In so concluding, we align ourselves with the numerous jurisdictions that have, on similar grounds, required appellate or other postconviction relief as a predicate to recovery in a criminal malpractice action. Thus, the Texas Supreme Court held in *Peeler v. Hughes & Luce* (Tex. 1995) 909 S.W.2d 494, 498, that a client who had pleaded guilty to a federal crime could not sue her criminal defense counsel for malpractice until she obtained postconviction relief: "Since [the plaintiff] has not been exonerated, her illegal acts remain the sole proximate and producing causes of her indictment and conviction as a matter of law." Similarly, the Virginia Supreme Court in *Adkins v. Dixon* (1997) 253 Va. 275, 281 [482 S.E.2d 797, 801], required postconviction relief as a predicate to a malpractice action against criminal

---

[1]Collateral estoppel precludes a party from relitigating in a second proceeding the matters litigated and determined in a prior proceeding. The requirements for invoking collateral estoppel are the following: (1) the issue necessarily decided in the previous proceeding is identical to the one that is sought to be relitigated; (2) the previous proceeding terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the previous proceeding. (*People v. Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].)

counsel on the basis that " 'courts will not assist the participant in an illegal act who seeks to profit from the act's commission.' "[2]

Significantly, most of the foregoing cases, like the present matter, involved convictions based upon guilty pleas or no contest pleas. (See *Gomez v. Peters, supra*, 470 S.E.2d at p. 695; *Hockett v. Breunig, supra*, 526 N.E.2d at p. 999; *Labovitz v. Feinberg, supra*, 713 N.E.2d at p. 381; *Schlumm v. O'Hagan, supra*, 433 N.W.2d at p. 847; *State ex rel. O'Blennis v. Adolf, supra*, 691 S.W.2d at p. 503; *Morgano v. Smith, supra*, 879 P.2d at p. 736; *Carmel v. Lunney, supra*, 511 N.E.2d at p. 1128; *Stevens v. Bispham, supra*, 851 P.2d at p. 559; *Peeler v. Hughes & Luce, supra*, 909 S.W.2d at p. 496; *Harris v. Bowe, supra*, 505 N.W.2d at p. 162.) As the Oregon Supreme Court explained in *Stevens v. Bispham, supra*, 851 P.2d at page 562: "However a person comes to be convicted—whether by a plea to the charge, through a plea agreement, or after a trial to judge or jury—for the purposes of a case like this one [claiming professional negligence by former criminal defense counsel], the person convicted is deemed equally guilty. . . . Although a

---

[2](See also, e.g., *Shaw v. State, Dept. of Admin. PDA* (Alaska 1991) 816 P.2d 1358, 1360 [convicted criminal defendant must obtain postconviction relief before pursuing an action for malpractice]; *Berringer v. Steele* (2000) 133 Md.App. 442, 476 [758 A.2d 574, 592] ["absent relief from a conviction or sentence, the criminal plaintiff's own actions are presumably the proximate cause of injury"]; *Labovitz v. Feinberg* (1999) 47 Mass.App. 306, 310-311 [713 N.E.2d 379, 383] ["public policy considerations" require that "[plaintiff's] undisturbed guilty plea should preclude him from pursuing his civil malpractice claim"]; *Schlumm v. O'Hagan* (1989) 173 Mich.App. 345, 362 [433 N.W.2d 839, 847] [malpractice claim against former criminal defense counsel should have been dismissed because "[t]he proximate cause of the injuries alleged was the defendant's voluntary plea of guilty and not defendant's negligence"]; *Morgano v. Smith* (1994) 110 Nev. 1025, 1028-1029 [879 P.2d 735, 737] ["to state a claim for legal malpractice against private criminal defense counsel . . . , the plaintiff must plead that he or she has obtained appellate or post-conviction relief in order to overcome a motion for summary judgment or a motion to dismiss"]; *Carmel v. Lunney* (1987) 70 N.Y.2d 169, 171 [518 N.Y.S.2d 605, 606, 511 N.E.2d 1126, 1127] ["the undisturbed determination of the client's guilt in the subsequent criminal prosecution precludes him, as a matter of law, from recovering for civil damages flowing from the allegedly negligent representation"]; *Stevens v. Bispham* (1993) 316 Or. 231, 239 [851 P.2d 556, 566] [intact conviction based upon no contest plea precludes action for professional negligence against former criminal defense counsel]; *Bailey v. Tucker* (1993) 533 Pa. 237, 251 [621 A.2d 108, 115] ["a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error"].)

Other cases implicitly require postconviction relief. (See, e.g., *Gomez v. Peters* (1996) 221 Ga.App. 57, 60 [470 S.E.2d 692, 695] ["a client who has acknowledged his guilt [by pleading guilty] cannot assert that his attorney's poor performance caused his incarceration"]; *Hockett v. Breunig* (Ind.Ct.App. 1988) 526 N.E.2d 995, 999 [client who voluntarily pleaded guilty was precluded from asserting a legal malpractice claim against his former criminal attorneys]; *State ex rel. O'Blennis v. Adolf* (Mo.Ct.App. 1985) 691 S.W.2d 498, 503 [guilty plea operated to preclude client from bringing a legal malpractice suit against criminal counsel]; *Harris v. Bowe* (1993) 178 Wis.2d 862, 868 [505 N.W.2d 159, 162] [criminal defendant who voluntarily pleaded guilty to a charge was precluded from satisfying the causation and injury elements of a legal malpractice action].)

plaintiff may wish that he or she had gotten a better deal, we do not consider it appropriate, outside of circumstances where . . . relief . . . is available under the post-conviction relief law, to treat a convicted offender as having been caused 'harm' in a legally cognizable way by any disposition of that person's case that was legally permissible." The convicted criminal's own conduct is deemed to be the sole cause of his or her indictment and conviction—either after trial or based on a guilty plea.

As many of these out-of-state courts have stressed, the requirement of exoneration by postconviction relief is firmly grounded in the unique constitutional and statutory guarantees provided to criminal defendants. The Pennsylvania Supreme Court explained in *Bailey v. Tucker, supra,* 621 A.2d at page 114: "Unlike in the civil litigation area, a client does not come before the criminal justice system under the care of his counsel alone; he comes with a full panoply of rights, powers, and privileges. These rights and privileges not only protect the client from abuses of the system but are designed to protect the client from a deficient representative. Thus, whereas in a civil matter a case once lost is lost forever, in a criminal matter a defendant is entitled to a second chance (perhaps even a third or fourth chance) to insure that an injustice has not been committed."

Addressing some of those rights and privileges, the court in *Labovitz v. Feinberg, supra,* 713 N.E.2d at page 383, referred to "the duty imposed upon judges under both Federal practice and the cognate [state] practice to assure not only that guilty pleas are knowingly, intelligently, and voluntarily offered and that there is [a] factual basis for each crime to which a plea is tendered, but also that the defendant's Sixth Amendment right to effective assistance of counsel has been honored." (See also *Stevens v. Bispham, supra,* 851 P.2d at p. 561 [describing the wide range of procedural protections afforded persons accused of criminal offenses in Oregon].)

*Wiley* similarly observed that the criminal justice system itself provides redress for the errors and omissions of counsel: "All criminal defendants have a Sixth Amendment right to effective assistance of counsel; that is, counsel acting reasonably ' "within the range of competence demanded of attorneys in criminal cases." [Citation.]' [Citation.] Not only does the Constitution guarantee this right, any lapse can be rectified through an array of postconviction remedies, including appeal and habeas corpus. Such relief is afforded even to those clearly guilty as long as they demonstrate incompetence and resulting prejudice, i.e., negligence and damages, under the same standard of professional care applicable in civil malpractice actions. [Citation.]" (*Wiley v. County of San Diego, supra,* 19 Cal.4th at p. 542.) These and other constitutional and statutory protections "are to safeguard against conviction of the wrongly accused and to vindicate fundamental values." (*Id.* at

p. 541.) They also support the principle that an individual who was convicted and has not obtained postconviction relief should not be permitted to shift responsibility for his or her predicament to former criminal defense counsel. (*Id.* at p. 540.)

In addition, the requirement of exoneration by postconviction relief protects against inconsistent verdicts—such as a legal malpractice judgment in favor of a plaintiff whose criminal conviction remains intact—that would contravene " 'a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' [Citation.]" (*Heck v. Humphrey* (1994) 512 U.S. 477, 484 [114 S.Ct. 2364, 2371, 129 L.Ed.2d 383].) This requirement also promotes judicial economy. Many issues litigated in the effort to obtain postconviction relief, including ineffective assistance of counsel, would be duplicated in a legal malpractice action; if the defendant is denied postconviction relief on the basis of ineffective assistance of counsel, collateral estoppel principles may operate to eliminate frivolous malpractice claims. Thus, *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 413-414 [59 Cal.Rptr.2d 103], held that the plaintiff in a legal malpractice action against his former criminal counsel was barred by collateral estoppel from relitigating his claim of professional negligence after he was denied habeas corpus relief on the same ground of ineffective representation. A further policy reason for requiring postconviction relief is to encourage the representation of criminal defendants by reducing the risk of baseless malpractice actions. (See *Glenn v. Aiken* (1991) 409 Mass. 699, 708 [569 N.E.2d 783, 788, 4 A.L.R.5th 1060].)

 Like the majority of out-of-state cases on point, we hold that an intact conviction precludes recovery in a legal malpractice action even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, *supra*, 58 Cal.2d at pp. 605-606.) We thus conclude that the Court of Appeal erred in applying the rule in *Teitelbaum Furs* in the context of a criminal malpractice action.[3]

We did not have occasion in *Teitelbaum Furs* or subsequent decisions to address the unique practical and policy considerations against permitting a

---

[3]In *Teitelbaum Furs*, the plaintiff corporations brought an action to recover for losses under contracts of insurance with the defendant insurers. We held that the action was barred by collateral estoppel, based upon the criminal conviction of the president of the corporations, after a trial, involving the same losses. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, *supra*, 58 Cal.2d at pp. 603-604.) Discussing the application of collateral estoppel principles to the facts of the case, we distinguished the effect of a plea of guilty in a previous criminal action. "When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a 'full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness

criminal defendant with an intact conviction to recover on a malpractice claim against his or her former criminal defense counsel. In light of those considerations, which we deem compelling, we conclude that such a conviction, regardless whether it follows a plea of guilty (or nolo contendere) or a trial, bars proof of actual innocence in a legal malpractice action.

By so holding, we also avoid a potential adverse consequence of distinguishing between convictions based upon guilty pleas and convictions after trial for the purpose of determining the preclusive effect of the convictions in legal malpractice actions. If only the client who pleaded guilty could recover for malpractice without first obtaining postconviction relief, attorneys might be tempted to practice defensive law when faced with the choice of advising a client to enter into a plea agreement or proceed to trial, in order to insulate themselves from malpractice actions. As we observed in *Wiley*, " '[I]n our already overburdened system it behooves no one to encourage the additional expenditure [of] resources merely to build a record against a potential malpractice claim.' [Citation.]" (*Wiley v. County of San Diego*, *supra*, 19 Cal.4th at pp. 544-545.)

For all these reasons, we conclude that a plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel.[4]

---

to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." (*Id.* at pp. 605-606.)

[4]We recognize that postconviction relief may be obtained on grounds other than attorney ineffectiveness. Like the Supreme Judicial Court of Massachusetts, "we see no logic in making a judicial ruling of attorney ineffectiveness in the constitutional sense a condition precedent to the liability of an allegedly negligent criminal defense attorney." (*Glenn v. Aiken, supra*, 569 N.E.2d at p. 785.) Thus, although an appellate court's ruling, for example *rejecting* a claim of ineffective counsel in a petition for writ of habeas corpus, may preclude a criminal defendant from maintaining a malpractice action against trial counsel, relief on a different ground does not bar him or her from litigating the issue of his attorney's professional negligence in a civil malpractice action.

We have no occasion in the present case to determine whether there might be exceptional circumstances—for example, where the plaintiff establishes that habeas corpus or other postconviction relief is unavailable and that he or she could not reasonably have been expected to have pursued such measures—under which a plaintiff should be afforded an opportunity to establish actual innocence in the malpractice action itself. Coscia does not allege any such circumstances here.

## III

We next consider the effect of the foregoing requirement of exoneration by postconviction relief upon the application of the relevant statute of limitations for legal malpractice actions arising from criminal proceedings.

Code of Civil Procedure section 340.6, subdivision (a), provides that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

In *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739 [76 Cal.Rptr.2d 749, 958 P.2d 1062], we explained that the "actual injury" provision in Code of Civil Procedure section 340.6, subdivision (a)(1), effectively continues the accrual rule established in *Budd v. Nixen, supra,* 6 Cal.3d at pages 200-201, which held that the statute of limitations began to run when the plaintiff sustained loss or damage from the attorney's negligence. "Under *Budd,* the cause of action could not accrue until the plaintiff suffered actual loss or damage resulting from the allegedly negligent conduct. [Citation.] After sustaining damages compensable in a negligence action, the plaintiff could establish a cause of action for professional negligence, and the limitations period commenced. [Citation.] Under [Code of Civil Procedure] section 340.6, the one-year limitations period commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission, but the period is tolled until the plaintiff sustains actual injury. That is to say, the statute of limitations will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra,* 18 Cal.4th at p. 751.) The test for actual injury is "whether the plaintiff has sustained any damages compensable in an action, other than

one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services." (*Ibid.*)

The Court of Appeal declined to impose a requirement of exoneration by postconviction relief in the present matter on the ground that "[t]he interest of plaintiffs in pursuing meritorious claims, and considerations of fairness [citation], preclude us from adopting a rule that under existing law would result in the forfeiture of most criminal malpractice actions on technical grounds." It asserted that such a requirement would create an inherent statute of limitations problem in criminal malpractice cases: Because of the time required to complete postconviction proceedings, the statute of limitations in most cases will have run long before the convicted individual has had an opportunity to remove the bar to establishing his or her actual innocence. (Citing *Wiley v. County of San Diego, supra,* 19 Cal.4th 532, 546-547 (conc. opn. of Werdegar, J.).)

The example of the practice in other jurisdictions, however, reveals that the requirement of postconviction relief, as a prerequisite to proving legal malpractice arising out of a criminal proceeding, need not result in a technical forfeiture of legitimate malpractice claims. As will appear, most courts have adopted one of two approaches to avoid possible unfair results.

Some out-of-state courts have held that the limitations period does not commence until the plaintiff has obtained postconviction relief, because the cause of action does not accrue for statute of limitations purposes until that time. Thus, in *Adkins v. Dixon, supra,* 482 S.E.2d at page 801, the Virginia Supreme Court expressly rejected the contention that the statute of limitations might bar the plaintiff's malpractice action before he obtained relief in postconviction proceedings: "Since successful termination of such a proceeding is a part of [the plaintiff's] cause of action, he has no right of action until that time, and, thus, the statute of limitations does not begin to run until termination of the post-conviction proceeding. [Citations.]" In crafting a similar rule, the Alaska Supreme Court in *Shaw v. State, Dept. of Admin. PDA, supra,* 816 P.2d at page 1362, relied upon the law of malicious prosecution, which requires that a plaintiff must prove that an unsuccessful prosecution occurred: "This element is not established, and indeed, remains uncertain, until the cessation of the underlying action. The same is necessarily true of post-conviction relief. The merits of the application for post-conviction relief cannot be established until the court has ruled on the matter." The decision explained: "By adopting the date that post-conviction relief is obtained as the trigger to the statute of limitations, we establish a bright line test which should significantly assist courts in the resolution of statute of limitation issues." (*Id.* at p. 1361.) Similarly, the Oregon Supreme

Court in *Stevens v. Bispham, supra,* 851 P.2d at page 566, held that the statute of limitations for malpractice did not start to run until the plaintiff obtained postconviction relief: "Plaintiff could not have brought this action until he had suffered legally cognizable harm. [Citation.]" (See also, e.g., *Morgano v. Smith, supra,* 879 P.2d at pp. 737-738; *Britt v. Legal Aid Socy.* (2000) 95 N.Y.2d 443, 447 [718 N.Y.S.2d 264, 741 N.E.2d 109, 112].)

Other jurisdictions have adopted a so-called two-track approach. In *Gebhardt v. O'Rourke* (1994) 444 Mich. 535, 548 [510 N.W.2d 900, 906], the Michigan Supreme Court rejected as a mere "legal fiction" the rule that a wrongly convicted criminal defendant suffers no cognizable harm, and the criminal malpractice claim does not accrue, until he or she has obtained appellate relief. The court thus held that exoneration by postconviction relief was not an element of a criminal malpractice claim or a prerequisite to proving actual innocence. (510 N.W.2d at p. 908.) The statute of limitations began to run on the day the plaintiff knew that she had a possible claim against her criminal defense counsel. (*Id.* at p. 904.) The decision in *Gebhardt* observed that a criminal defendant who has initiated postconviction relief proceedings "should have knowledge sufficient to have discovered his claim against his initial defense attorney for statute of limitations purposes." (*Id.* at p. 907.) "With his claim preserved, he can and should seek a stay in the civil suit until the criminal case is resolved." (*Ibid.*; see also *Silvers v. Brodeur* (Ind.Ct.App. 1997) 682 N.E.2d 811, 818 & fn. 4 [adopting rule consistent with that in *Gebhardt*]; *Seevers v. Potter* (1995) 248 Neb. 621, 629-630 [537 N.W.2d 505, 510-511] [same]; *Duncan v. Campbell* (1997) 123 N.M. 181, 185-187 [936 P.2d 863, 867-869] [same].)

The Supreme Court of Pennsylvania, in *Bailey v. Tucker, supra,* 621 A.2d at page 115, agreed with the decision in *Gebhardt* on the statute of limitations point, but also held that "a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error . . . ." Such a requirement does not relieve the plaintiff of his or her "duty to initiate this cause of action within the statute of limitations period." (*Id.* at p. 115, fn. 13.) In *Bailey*, the statute of limitations commenced upon the termination of the attorney-client relationship, "since at that point the aggrieved defendant is aware of the injury (i.e., the conviction) . . . ." (*Id.* at p. 116.)

With regard to the procedural status of a civil action filed prior to completion of the postconviction process, the decision in *Bailey* stated: "[A]n attorney defendant who is served with a complaint alleging professional malpractice for the handling of a criminal matter may interpose a preliminary objection on the grounds of demurrer. [Citation.] The trial court

shall then reserve its ruling on said objection until the resolution of the post-conviction criminal proceedings." (*Bailey v. Tucker, supra,* 621 A.2d at p. 115, fn. 13.)

The court in *Berringer v. Steele, supra,* 758 A.2d at page 604, followed *Bailey,* requiring as follows: "[N]otwithstanding that the criminal plaintiff must obtain post conviction relief as a predicate to recovery in a criminal malpractice case, we conclude that a criminal plaintiff must also comply with the limitations period [for professional malpractice]." The court recognized that, to avoid the statute of limitations bar, a criminal plaintiff might be required to initiate the malpractice suit prior to resolution of all postconviction proceedings. "In that circumstance, upon motion of either party, the trial court in the criminal malpractice action should not dismiss the malpractice case merely because the criminal plaintiff has not obtained post conviction relief. Rather, the court should stay the malpractice suit pending the criminal plaintiff's diligent effort to obtain resolution of the requisite post conviction, appellate, or habeas proceedings." (*Ibid.*)

McKenna & Cuneo urges that we adopt the rule in *Adkins v. Dixon, supra,* 482 S.E.2d 797. It contends that, under the reasoning in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra,* 18 Cal.4th 739, unless and until such a plaintiff obtains postconviction relief, no cause of action for criminal malpractice has accrued under Code of Civil Procedure section 340.6, subdivision (a). According to McKenna & Cuneo, the question presented is not whether the statute of limitations under Code of Civil Procedure section 340.6, subdivision (a), is *tolled* pending the resolution of related actions that might rectify or mitigate the actual harm caused by the malpractice, because this court expressly has rejected that approach. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra,* 18 Cal.4th at p. 763, overruling *ITT Small Business Finance Corp. v. Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965].) Rather, McKenna & Cuneo asserts, delaying accrual until postconviction relief appears logically compelled by the requirement that the plaintiff must exhaust postconviction remedies before he or she can prove the element of actual innocence in an action for criminal malpractice. Alternatively, McKenna & Cuneo proposes that the action for criminal malpractice should be subject to tolling, because the plaintiff in such an action either has sustained no "actual injury" (Code Civ. Proc., § 340.6, subd. (a)(1)) or is under a "legal disability" (*id.,* subd. (a)(4)) until he or she is exonerated by postconviction relief.

We agree with the Court of Appeal that these proposals are inconsistent with our previous decisions addressing the subject of accrual and actual injury under Code of Civil Procedure section 340.6, subdivision (a), including *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra,* 18

Cal.4th 739. This statute provides that the limitations period begins to run, subject to tolling, on the date the attorney committed an act or omission amounting to professional negligence. An action for attorney malpractice "shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from *the date of the wrongful act or omission*, whichever occurs first." (Code Civ. Proc., § 340.6, subd. (a), italics added.) The wrongful act or omission giving rise to a criminal malpractice action necessarily occurred during the course of the attorney's representation of the client—not at some time thereafter, when the client obtained postconviction relief.

With regard to tolling, we decline to adopt the legal fiction that an innocent person convicted of a crime suffered no actual injury until he or she was exonerated through postconviction relief. As the Court of Appeal herein observed, "a criminal conviction—with its attendant financial and social ramifications, incarceration, probation, fines or other damaging consequences—would constitute appreciable harm, or 'actual injury' " within the meaning of Code of Civil Procedure section 340.6, subdivision (a)(1). Nor does the tolling provision for legal disability (*id.*, subd. (a)(4)) apply in these circumstances. Coscia was not prevented by circumstances beyond his control, such as minority, mental illness, or incarceration, from pursuing his legal remedy.

The alternatives proposed by McKenna & Cuneo for avoiding the express provisions of Code of Civil Procedure section 340.6 are inimical to the "fundamental purpose underlying statutes of limitations . . . to protect defendants from having to defend stale claims by providing notice in time to prepare a fair defense on the merits. [Citation.]" (*Downs v. Department of Water & Power* (1977) 58 Cal.App.4th 1093, 1099 [68 Cal.Rptr.2d 590].) This purpose is of particular concern in the present context, when years, even decades, may elapse before the wrongfully convicted criminal defendant obtains postconviction relief.

We conclude that the two-track approach adopted in *Bailey v. Tucker, supra,* 621 A.2d 108, and *Berringer v. Steele, supra,* 758 A.2d 574, is most consistent with the requirements of Code of Civil Procedure section 340.6, subdivision (a), and the interests of fairness to both plaintiffs and defendants in criminal malpractice actions. Thus, the plaintiff must file a malpractice claim within the one-year or four-year limitations period set forth in Code of Civil Procedure section 340.6, subdivision (a). Although such an action is subject to demurrer or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period

in which such a plaintiff timely and diligently pursues postconviction remedies. As explained in *Adams v. Paul* (1995) 11 Cal.4th 583, 593 [46 Cal.Rptr.2d 594, 904 P.2d 1205], "trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution of underlying litigation." By this means, courts can ensure that the plaintiff's claim will not be barred prematurely by the statute of limitations. This approach at the same time will protect the interest of defendants in attorney malpractice actions in receiving timely notice and avoiding stale claims.

## IV

McKenna & Cuneo contends that the demurrer in the present case correctly was sustained without leave to amend, because Coscia did not allege that he was innocent—only that his criminal defense counsel negligently failed to secure a "better deal." We are urged to apply principles of judicial estoppel to preclude him from now amending his complaint to allege his innocence.

Coscia's complaint, which was filed before *Wiley v. County of San Diego, supra,* 19 Cal.4th 532, did not allege actual innocence. It appears, however, that there is a reasonable possibility that the defect identified by McKenna & Cuneo can be cured by amendment. Accordingly, we conclude that Coscia should be permitted an opportunity to amend his complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) The trial court should stay proceedings in the present action as necessary to permit Coscia's timely pursuit of postconviction remedies.

## V

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.