Filed 11/21/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DONALD McCURDY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE COUNTY OF RIVERSIDE,<br><br>    Defendant and Respondent. | D083420<br><br><br><br>(Super. Ct. No. CVRI2305569) |

APPEAL from an order of the Superior Court of Riverside, Irma Poole Asberry, Judge. Affirmed.

Peter Borenstein, for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Respondent.

Donald McCurdy appeals from an order denying his petition for relief from the notice requirement of the Government Claims Act (Gov. Code § 810 et seq.).[1] McCurdy submitted a claim for damages to the County of Riverside (the County) just over one year after the Court of Appeal granted his petition for writ of habeas corpus based on a finding that a Riverside County public defender provided him ineffective assistance of counsel in a probation revocation hearing. The County denied the claim, finding that it was not

---

[1]    Further unspecified statutory references are to the Government Code.

presented within six months of accrual pursuant to section 911.2. McCurdy applied for leave to file a late claim, which the County also denied.

McCurdy then filed a petition for relief from the notice requirement in the trial court. He asserted his claim did not accrue until August 2022, when remittitur issued on the writ of habeas corpus, and that he had one year from that date to present a claim under section 911.2 because the claim arose out of contract as opposed to tort or personal injury. Alternatively, he asserted three different attorneys advised him the one-year claim period applied, and any failure to present a claim within six months was therefore the result of mistake, inadvertence, surprise, or excusable neglect. The trial court rejected his assertions and denied the petition. McCurdy presents similar arguments on appeal. We conclude his claim arises in tort and therefore falls under the six-month claims period in section 911.2 and the trial court did not abuse its discretion in finding that he did not show mistake, inadvertence, surprise, or excusable neglect. Accordingly, we affirm the trial court's order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

McCurdy pled guilty to burglary and corporal injury of a spouse in 2018. The trial court sentenced him to five years in prison but suspended the sentence in favor of probation. The court also issued a criminal protective order prohibiting McCurdy from contacting the victim, with whom he shares a child.

In August 2020, the district attorney alleged McCurdy violated his probation by leaving the county without permission and giving the victim a Mother's Day card that the child had made with him during a supervised visit. McCurdy claimed that he left the county to attend a court hearing in San Diego, that he had his probation officer's permission to do so, and that he believed the social worker supervising the visit gave the victim the card. He

2

tried to reach a public defender by phone in the weeks leading up to the hearing but was unable to do so.

McCurdy finally met with a public defender approximately one hour before the probation revocation hearing, which occurred in October 2020. He told the attorney that he left the county to attend a family court hearing, and that the hearing should be reflected in the court's online records. He also said that he had not given the victim the card and believed the social worker had given it to the child's mother. The public defender told McCurdy that she sought a continuance in a chambers conference before the hearing but the judge said he would not grant it. McCurdy said that he wanted to proceed with the hearing without any further time waiver because he believed "if he just told the court what happened, he would prevail."

McCurdy did not prevail. For reasons that are unclear, the public defender stopped McCurdy's testimony before he was able to tell the full story of what happened with the Mother's Day card and did not present any evidence verifying the family law court hearing. The trial court found McCurdy violated his probation and explained, "It's clear to this Court, by preponderance of the evidence, that on April 6th and May 6th of 2020, he was given reasonable directives not to leave Riverside County without permission and not to send a Mother's Day card to the victim. It's clear to this Court he violated both those conditions based on testimony of [the probation officer] as well as the defendant's own admission in this court today." The court noted that proof of the family court hearing would have been "compelling evidence in Mr. McCurdy's defense." The court revoked McCurdy's probation and imposed the previously stayed five-year prison sentence.

McCurdy filed a direct appeal. His appointed appellate counsel filed a brief in accordance with *People v. Wende* (1979) 25 Cal.3d 436 stating they

3

had not identified any errors. In a supplemental brief, McCurdy asserted the trial judge erred by relying on unproven allegations and preventing him from presenting evidence in his defense, and the public defender provided ineffective assistance of counsel by failing to obtain or present exonerating evidence. In April 2021, the Court of Appeal affirmed the judgment, but noted the record on appeal did not contain sufficient evidence as to what evidence was not presented, or what tactical reason the public defender may have had for decisions she made about how to present his case. (*People v. McCurdy* (Apr. 19, 2021, E076031) [nonpub. opn.].)

Around the same time, in March 2021, McCurdy petitioned the Court of Appeal for a writ of habeas corpus "on the ground he was denied effective assistance of counsel during his probation violation hearing because the Riverside County Public Defender's office failed to investigate his factual defenses." As is permitted in a petition for writ of habeas corpus, McCurdy provided additional support for his claim by attaching declarations from himself, the social worker that supervised the visit with his child, and the public defender that represented him at the probation revocation hearing.

The social worker stated in her declaration that she texted a photo of the card to the child's mother and asked whether it was okay for the child to bring the card home. The mother initially expressed some hesitation, but later asked the social worker to have it sent home to her. The social worker confirmed that McCurdy did not ask her to contact the mother about the card and was not the one that delivered the card. The public defender confirmed that McCurdy told her before the hearing that he did not believe he needed permission to attend the family law hearing but had called his probation officer afterwards out of an abundance of caution, and that he was not the one that gave the mother the card. She also confirmed that McCurdy wanted

4

to go forward with the hearing on the belief that he would prevail if he just told the court what happened.

On June 16, 2022, the Court of Appeal granted the habeas petition. It found that McCurdy had been denied effective assistance of counsel and directed the trial court "to vacate the order finding petitioner violated the terms of his probation and placing petitioner in custody and enter a new order finding petitioner did not violate the terms of his probation and reinstating probation." Remittitur issued on the writ of habeas corpus on August 17, 2022.

On June 30, 2023, McCurdy presented a claim for damages to person or property to the County of Riverside.[2] He stated therein that the damage or injury occurred on August 17, 2022. He explained that he received ineffective assistance of counsel from a public defender at the probation revocation hearing in August 2020, that the Court of Appeal granted his petition for writ of habeas corpus finding the same on June 16, 2022, and that he had been wrongfully imprisoned for 600 days.

The County responded by written letter on July 10, 2023. The letter listed the date of loss as "08/17/2022" and stated the claim was not presented within six months after the event or occurrence as required by section 911.2. The letter informed McCurdy that his only recourse was to apply for leave to present a late claim.

McCurdy presented his application to present a late claim approximately one week later, on July 18, 2023. He asserted he had one

---

[2] The County deemed the claim received on July 5, 2023. While the date of claim presentation is critical to our analysis, the difference between June 30 and July 5 is not. Both are more than one year from June 16, 2022, and less than one year from August 17, 2022.

year, and not six months, from August 17, 2022, to present his claim under section 911.2 because the asserted cause of action was not for death, injury to person or to personal property, or growing crops.[3] He also stated, somewhat summarily, that he "would have presented his claim earlier but was prevented from doing so because of the difficulty he experienced finding and retaining an attorney to pursue [the] government claim." The County denied the application, stating that it did not satisfy the criteria for leave to present a late claim listed in section 911.6, subdivision (b).[4]

In October 2023, McCurdy filed a petition for an order of relief from the Government Claims Act with the trial court. He asserted the County mistakenly applied the six-month limitation period and, to the extent the six-month period did apply, he "should be relieved from the requirements of the claim statute for reasons of mistake, inadvertence, surprise, or excusable neglect as described in the [declaration of his attorney]."

The attorney declaration stated in relevant part, "Petitioner was advised on three separate occasions by three different attorneys, including myself, that the one-year limitation period applied to his claim for

---

[3] Section 911.2, subdivision (a) states: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) not later than one year after the accrual of the cause of action."

[4] As relevant here, section 911.6, subdivision (b)(1) permits a late claim if "The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2."

6

professional negligence against the County and its employee. [¶] Despite his best efforts, Petitioner was only able to retain me on June 12, 2023. I subsequently presented his government claim to the County on July 5, 2023. [¶] To the extent that the Court finds that the six-month limitation period applies, Petitioner should be relieved from the claim statute for reasonably relying on legal opinions by three different attorneys, leading him to mistakenly believe he had one year in which to present his claim to the Board."

In opposition, the County asserted the underlying claim accrued when the trial court revoked McCurdy's probation and, thus, his claim was time-barred regardless of whether it was governed by the six-month or one-year limitation period under section 911.2. The County asserted, further, that McCurdy had not met his burden to prove mistake, inadvertence, surprise or neglect as required to pursue a late claim under section 946.6, subdivision (c), noting that "he did not even search for an attorney until August 2022" and did not file his late claim until July 5, 2023. McCurdy did not file a reply.

The trial court held a hearing, but the transcript is not included in the record on appeal. After hearing oral argument, the trial court found that McCurdy's claim accrued when the previous court revoked his probation and was therefore untimely under either the six-month or one-year period. The court found McCurdy's application to file a late claim was likewise time-barred as it was filed well over one year from the accrual of his claim and, regardless, McCurdy failed to show that he was entitled to relief under section 946.6.

McCurdy filed a timely notice of appeal.

## II. DISCUSSION

McCurdy maintains that he had one year from accrual of the cause of action to present his claim under section 911.2. He asserts the trial court erred by finding his claim accrued when the trial court revoked his probation, and instead relies on Code of Civil Procedure section 340.6—addressing the statute of limitations for claims related to attorney negligence—to assert his claim did not accrue until August 17, 2022, when remittitur issued on the writ of habeas corpus. The County maintains that McCurdy had six months to present his claim under section 911.2. The County asserts McCurdy waived any arguments under Code of Civil Procedure section 340.6 and, regardless, did not present his claim within six months of August 17, 2022, as required by section 911.2. In addition, the County points out that McCurdy does not challenge the trial court's finding that he did not establish mistake, inadvertence, surprise or excusable neglect in his briefing on appeal.

### A. Legal Principles and Standard of Review

Section 905 of the Government Claims Act requires that "all claims for money or damages against local public entities," subject to certain enumerated exceptions not applicable here, "be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910)." Section 900.4 defines " 'local public entity' " and expressly included counties. Section 910 describes the information that a claim must contain.

Section 911.2, subdivision (a) sets for the time for bringing such claims and specifies that any claim "relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . .

8

not later than one year after the accrual of the cause of action." "When a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim." (§ 911.4, subd. (a).) However, "[t]he application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).)

The California Supreme Court has explained, " '[t]he requisite timely claim presentation before commencing a lawsuit . . . permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' " (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 908 (*Rubenstein*).) In essence, the notice requirements allow public entities to engage in fiscal planning to cover potential liabilities already incurred, while also avoiding the incursion of additional liabilities for the same reasons, minimizing the overall burden to taxpayers. (*Ibid.*)

Nonetheless, "[s]ection 946.6 provides a procedure for relieving a party from the condition precedent of presenting a timely claim to a public entity

9

before commencing an action against the public entity on the cause of action contained in the claim." (*DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 459 (*DeVore*).) "In order to obtain relief, the party must establish that an application to the public entity for leave to file a late claim (§ 911.4) was filed in a reasonable period of time (not to exceed one year) after the accrual of the cause of action for reasons of inadvertence, mistake, surprise, or excusable neglect akin to the showing necessary for relief from default." (*DeVore,* at p. 459.)

We review the trial court's denial of a petition for relief pursuant to section 946.6 for an abuse of discretion. (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382 (*Barragan*).) However, the interpretation of the relevant underlying statutes is a matter of law that we review de novo. (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089.) Moreover, we are not constrained by the trial court's reasoning and may affirm the result on any ground supported by the record. (*Apex Solutions, Inc. v. Falls Lake Ins. Management Co., Inc.* (2024) 100 Cal.App.5th 1249, 1257.)

### B. McCurdy Did Not Present a Claim Within the Time Limitations Set Forth in Section 911.2

We begin our analysis by considering McCurdy's assertion, based on Code of Civil Procedure section 340.6, that his claim did not accrue and the time limitation under section 911.2 did not begin to run until August 17,

10

2022, when remittitur issued on the writ of habeas corpus directing the trial court to reinstate his probation.[5]

Section 901 provides, in relevant part, " '[f]or the purpose of computing the time limits prescribed by [ ] Sections 911.2, 911.4, 945.6, and 946.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon.' " (*Rubenstein, supra,* 3 Cal.5th at p. 910.) Thus, " '[a]ccrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants.' " (*Id.* at p. 906.)

McCurdy asserts Code of Civil Procedure section 340.6 sets forth the relevant statute of limitations for a claim, like his, based on attorney negligence. He contends, the "first sentence of Section 340.6 provides a general limitation period for professional negligence claims of one year 'after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.' The

---

[5] The County asserts McCurdy waived this contention because he did not assert it in his application for leave to present a late claim or in his petition for relief in the trial court. McCurdy has always asserted his claim accrued on August 17, 2022, and we note that the County listed "8/17/2022" as the date of loss in its first two communications to McCurdy. The County did not assert the claim instead accrued in 2018 until its opposition to McCurdy's petition for relief to the trial court. Before that, McCurdy had no need to defend his apparently undisputed assertion that his claim accrued in August 2022. We therefore decline to decide the issue based on waiver.

11

second sentence (later added by Stats. 2009, ch. 432 (A.B. 316), § 2) provides a specific limitation period of two years 'after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case,' but only in cases where the plaintiff must establish his factual innocence as an element of the claim." (See Code Civ. Pro. § 340.6, subd. (a).)

The County acknowledges this language, but nevertheless relies on *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 (*Coscia*) to assert the claim accrues when the client discovers or should have discovered the facts essential to the claim, which is, in most cases, the date the attorney committed an act or omission amounting to professional negligence. (*Id*. at pp. 1209–1210.) In this case, the County asserts McCurdy's claim accrued in 2020, when the public defender allegedly provided ineffective assistance of counsel, resulting in the revocation of McCurdy's probation. However, as the court in *Coscia* recognized, accrual at the time of the alleged negligence creates a disconnect in criminal malpractice cases, where actual innocence is an element of the underlying malpractice claim. (*Id*. at pp. 1201, 1204.) Accordingly, the court went on to consider "the effect of the foregoing requirement of exoneration by postconviction relief upon the application of the relevant statute of limitations for legal malpractice actions arising from criminal proceedings." (*Id*. at 1206.)

When the court issued its opinion in *Coscia* in 2001, Code of Civil Procedure section 340.6 did not have a provision addressing postconviction exoneration. (*Coscia, supra*, 25 Cal.4th at p. 1206.) The *Coscia* court acknowledged a split across other jurisdictions, some of which tolled the limitations period until the plaintiff obtained postconviction relief and some of which did not. (*Id*. at pp. 1206–1210.) Considering the language of Code of Civil Procedure section 340.6 when the court decided *Coscia*, the court

12

concluded the statute of limitations in California began to run on the date the attorney committed the act or omission amounting to negligence, and the solution in criminal cases was for the trial court to stay the malpractice case while the plaintiff attempted to obtain postconviction exoneration. (*Id.* at pp. 1210–1211; see also *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 62–70 (*Ovando*) [discussing *Coscia* and accrual of action for malpractice in a criminal case prior to the amendments to Code of Civil Procedure section 340.6]; *Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1186–1187 (*Khodayari*) [applying *Coscia* and concluding appellant alleging legal malpractice against private defense attorney had to show actual innocence of the probation violations allegedly resulting from the attorney's negligence].)

In 2009, the Legislature amended Code of Civil Procedure section 340.6 to add the second sentence upon which McCurdy now relies, addressing the impact of postconviction exoneration. Code of Civil Procedure section 340.6 now reads, "If the plaintiff is required to establish the plaintiff's factual innocence for an underlying criminal charge as an element of the plaintiff's claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case." The language suggests that this change was in direct response to the issue addressed in *Coscia*.

However, this leaves open a question, potentially relevant in this case, as to whether "final disposition" means the date on which the court issues a writ, opinion, or other decision establishing actual innocence, or, as McCurdy alleges, the date that remittitur issues.[6] In *Coscia*, the court concluded, "a

---

[6] McCurdy submitted his claim to the County on June 30 or July 5, 2023, more than one year after the Court of Appeal issued the relevant writ of habeas corpus, but less than one year after remitter issued.

13

plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—*for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief*—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel." (*Coscia, supra*, 25 Cal.4th at p. 1205, italics added.)  But the question of *when* such a decision becomes final was not before the court and, thus, the court did not elaborate further. Here, neither party provides, nor are we aware of, any published case conclusively deciding the issue.

On the one hand, as we have explained, the 2009 amendment to Code of Civil Procedure section 340.6 appears to derive from the California Supreme Court's decision in *Coscia,* in which the court at least suggested that a grant of habeas corpus relief is a final disposition demonstrating actual innocence.  (*Coscia, supra*, 25 Cal.4th at p. 1205.)  On the other hand, in the context of retroactivity of statutory amendments, where this issue has been frequently addressed in recent years, final disposition is generally considered to be the time at which the courts no longer have jurisdiction to modify or reverse the relevant decision, i.e., as McCurdy asserts, when remittitur issues.  (See, e.g., *People v. McKenzie* (2020) 9 Cal.5th 40, 46–49 [explaining that criminal disposition becomes final when final court authorized to review it loses jurisdiction].)

However, we need not, and expressly do not, decide the issue here. Even if we accept McCurdy's position that the disposition was not final and his claim did not accrue until the remittitur issued on the writ of habeas corpus directing the trial court to reinstate his probation, he still did not present his claim for another 11 months.  The County asserts, as it has all

14

along, that a claim for legal malpractice is necessarily a claim for personal injury and is therefore subject to the six-month limitation in section 911.2. Thus, even assuming the claim did not accrue until August 17, 2022, McCurdy still did not comply with the time requirement in Section 911.2.

McCurdy asserts, as he did in the trial court, that his claim sounds, at least in part, in contract. Thus, he contends his claim is not one for "injury to person or personal property" and is instead subject to the one-year time limitation for "any other cause of action" in Section 911.2. McCurdy relies on two cases to support this contention, but neither is persuasive.

In *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, the court noted, in the context of a civil suit against a privately retained attorney, that "legal malpractice constitutes both a tort and a breach of contract." (*Id.* at p. 349.) The case did not address a government claim and the court went on to conclude that the claim was barred in that case regardless (for reasons other than the limitations period) and thus had no occasion to discuss the impact on the relevant statutes of limitation or the time to file a claim under section 911.2. (*Id.* at pp. 349–350.)

In *Voth v. Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, the court considered whether, under a former version of section 911.2, "a lessee's claim for damages against a public entity-lessor for breach of an implied promise of fitness of water for use on growing crops sounds in tort," or contract. (*Id.* at p. 355.) The court explained, "If the breach is both contractual and tortious, we must ascertain which duty is the quintessence of the action. If it is unclear, courts generally will consider the action to be in contract rather than in tort." (*Id.* at pp. 356–357.) "However, if the action is predicated on a duty independent of the contract, it will be deemed to be in tort regardless of the contractual relation of the parties." (*Id.* at p. 357.)

As an initial matter, it is not apparent that there was ever a contract that could have been breached in the first instance. McCurdy's claim arises from alleged legal malpractice of his appointed Riverside County public defender. McCurdy alleged in his petition for relief in the trial court that his claim was "founded upon causes of action for professional negligence, breach of fiduciary duty, and breach of contract." In the associated declaration, his attorney alleged that McCurdy's "claim arises from the contract he had with his public defender to represent him in a probation violation hearing." But this alleged contract is not attached to the declaration and does not appear anywhere in the record.

Rather, McCurdy's attorney cites generally to *Neel v. Magna, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, another case involved a claim against a private attorney, in which the court explained that legal malpractice typically gives rise to an action in tort, "*in the usual case*, the attorney undertakes to perform his duties pursuant to a contract with the client," and thus there may also be a breach of that contract. (*Id*. at p. 181, italics added.) McCurdy fails to acknowledge, though, that in the usual case involving a public defender, the court makes the appointment, and there is no underlying contract with the defendant. McCurdy presents no case in which a public defender was subject to a contract claim for negligent representation. Moreover, even if there was a contract, these cases do not stand for the proposition that a claim for breach of contract somehow precludes a simultaneous claim for personal injury or tort.

Here, the result of the alleged legal malpractice was that McCurdy was wrongfully incarcerated, and he sought non-economic damages for what can only be described as personal injuries deriving therefrom. Thus, we agree that the weight of authority supports the County's contention that his

primary claim is based in personal injury and is subject to the six-month notice requirement set forth in section 911.2. (See *Khodayari, supra,* 200 Cal.App.4th at pp. 1190–1191 [where primary right at issue is right to competent legal representation, claims arise from tort theory of negligence]; *Ovando, supra,* 159 Cal.App.4th at p. 73 ["In a criminal case, however, the primary interest at stake in the defendant's legal representation is the defendant's liberty. An emotional injury resulting from the incarceration of an innocent defendant is plainly foreseeable."]; *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1023 ["a claim for legal malpractice is more akin to those types of claims which are *not* assignable, i.e., claims for personal injury, wrongs of a purely personal nature"]; *Holliday v. Jones* (1989) 215 Cal.App.3d 102, 115 [in criminal context, "emotional distress damages necessarily result from the loss of that liberty due to no other reason than lawyer malpractice"].)

Accordingly, we conclude that, even if McCurdy's claim did not accrue until remittitur issued in August of 2022, section 911.2 still required McCurdy to present it within six months. McCurdy did not present his claim to the County until June 30, 2023 at the earliest, more than six months after August 2022, and the claim was therefore untimely.

### C. McCurdy Does Not Establish an Abuse of Discretion

As a final matter, we must conclude that McCurdy has not established that the trial court abused its discretion by concluding that he did not establish mistake, inadvertence, surprise or excusable neglect necessary to establish a right to relief under section 946.6. We acknowledge that section 946.6 " 'is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary,' " and " 'that wherever possible cases should be heard on their merits.' " (*Barragan, supra,* 184

17

Cal.App.4th at p. 1382.) " 'Thus, a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application.' " (*Ibid.*)

Here, although we are sympathetic to McCurdy's plight, we cannot conclude that the trial court abused its discretion. McCurdy presented only a rough outline of his claim of mistake, inadvertence, surprise or excusable neglect in the trial court. He relied exclusively on a declaration from his current attorney to assert both that he had trouble finding an attorney that would represent him and that all three attorneys he consulted informed him that the one-year claims presentation period applied under section 911.2. McCurdy provides no details or evidentiary support regarding his own attempts to obtain an attorney in the 11 months after his release, nor does he identify the two other attorneys he allegedly consulted, when those consultations occurred, the basis upon which they allegedly concluded that the one-year claim presentation period applied, or why, despite apparently having some familiarity with the Government Claims Act, these other two attorneys were unwilling or unable to present at least a basic claim to the County in a timely manner. (See *Devore, supra*, 221 Cal.App.4th at p. 459 ["the preference for a trial on the merits does not warrant relief if based on a perfunctory recital of diligence in support of excusable neglect"].) As we have explained, the weight of authority suggests that attorney negligence, particularly in the context of a public defender, is primarily a cause of action for personal injury. At a minimum, the attorneys should have been aware that the six-month period might apply and therefore should have presented a protective claim within that period.

Regardless, as the County points out, on appeal, McCurdy does not even assert, let alone present a cogent legal argument, that the trial court

abused its discretion in concluding that this minimal showing was not sufficient to establish mistake, inadvertence, surprise or excusable neglect in his briefing on appeal. He focuses his argument solely on the underlying legal issues regarding the timeliness of his initial claim, and, as we have explained, we conclude he did not present his claim within the time limitations of section 911.2.

## III.   DISPOSITION

The order is affirmed. The parties to bear their own costs on appeal.


KELETY, J.

WE CONCUR:


HUFFMAN, Acting P. J.


RUBIN, J.