[No. B162059. Second Dist., Div. Seven. Feb. 19, 2003.]

BIRD, MARELLA, BOXER & WOLPERT et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN J. REINER et al., Real Parties in Interest.

**COUNSEL**

Musick, Peeler & Garrett, Mary Catherine M. Bohen and Cheryl A. Orr for Petitioners.

No appearance for Respondent.

Lange & Koncius, Joseph J. M. Lange and Jeffrey A. Koncius for Real Parties in Interest.

## OPINION

**JOHNSON, J.**—Under our Supreme Court's holding in *Wiley v. County of San Diego*,[1] a convicted criminal defendant must allege actual innocence in order to state a cause of action for legal malpractice against former defense counsel. The issue before us is whether a convicted criminal defendant must allege actual innocence in order to state a cause of action against former defense counsel for breach of contract and related torts arising from a fee dispute between the parties.

When the primary rights asserted in the complaint are the rights to be billed in accordance with specific contractual provisions and to be free from unethical or fraudulent billing practices on the part of defense counsel, we hold a criminal defendant client need not allege actual innocence in order to state a cause of action for breach of contract, breach of fiduciary duty, fraud and money had and received.

### FACTS AND PROCEEDINGS BELOW

Plaintiff John J. Reiner brought this action against his former attorneys, Bird, Marella, Boxer & Wolpert, and individuals at that firm alleging breach of written contract, breach of fiduciary duty, fraud, and money had and received.[2] For purposes of reviewing a demurrer we accept as true the well-pleaded facts in the complaint. The first amended complaint alleges in pertinent part:

Reiner retained defendants by written contract to represent him in a criminal matter. Defendants represented Reiner from April 2000 to December 2000, after which Reiner discharged them and retained a different firm. In April 2001, Reiner was convicted of various criminal offenses. Reiner does not allege in this action he was innocent of the charges for which he was convicted and he specifically renounces any claim defendants were negligent in their representation.

The written retainer agreement provides defendants will charge Reiner only for "services reasonably required." Reiner alleges in breach of this

---

[1] *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 534, 545 [79 Cal.Rptr.2d 672, 966 P.2d 983].

[2] Reiner and his wife also pled claims for intentional and negligent infliction of emotional distress and loss of consortium. The Reiners have now abandoned those claims and we do not address them in this opinion.

provision defendants charged him "an unconscionable fee" by, among other things:

—"charging plaintiff for work defendants did not perform";

—"grossly overcharging plaintiff for work they did perform";

—"inflating/padding the time charged to plaintiff";

—"manufacturing work not to advance plaintiff's cause but instead solely to increase their fees";

—"over-charging and double charging for costs"; and

—"charging for costs not incurred on behalf of plaintiff."

Defendants also breached other specific provisions of the contract including:

—the agreement to bill Reiner "in 'minimal units of a tenth (0.1) of an hour' ";

—the agreement to "use paralegals for tasks which did not require attorneys";

—the agreement to bill Reiner only for costs incurred " 'in performing legal services under this agreement' "; and

—the agreement to bill travel costs only for " 'out of town travel.' "

Reiner further alleges defendants breached their contract by "billing for costs not provided for in the contract; charging for meals. that were not related to any work performed for plaintiff; and double-billing and inflating the cost of meals."

In his claim for breach of fiduciary duty Reiner alleges defendants breached their duties "to exercise the utmost care, integrity, honesty, loyalty, good faith and candor with respect to their dealings and communications with plaintiff, to refrain from deception of any form, and to place plaintiff's interests before their own interests" by:

—charging and collecting an "unconscionable fee" in violation of rule 4-200 of the Rules of Professional Conduct;

—"providing false and fraudulent responses to plaintiff's inquiries regarding defendants' billing and other practices and by concealing the true facts that would have alerted plaintiff to defendants' misfeasance";

—"using 'block billing' " rather than "separately list the time expended to perform each task";

—"not perform[ing] the work for which they charged plaintiff";

—"bill[ing] for costs not incurred on behalf of plaintiff"; and

—"grossly inflat[ing] the time entries for work they did perform."

The fraud claim alleges on at least four separate occasions Reiner wrote and spoke to defendants expressing his "concerns regarding defendant firms' use of block billing; its vague descriptions of the work allegedly performed; its apparently excessive fees and inflated billings for performing simple tasks; its charging for unusual costs; and its charging for costs that were not reimbursable under the contract." In response, Reiner alleges "[d]efendants falsely represented to plaintiff [the] use of block billing was the standard method of conveying invoice information; that the time entries were honest and accurate and reflected work actually performed and the time actually spent to perform the tasks listed; and that the designated costs set forth in the invoices were actually incurred on behalf of plaintiff and accurately charged to plaintiff." Reiner alleges he "justifiably relied on defendants' representations" and in reliance thereon "paid each and every invoice, promptly and in full." According to Reiner, if he "had known the true facts [he] would have immediately terminated defendants' representation and would not have continued to pay defendants' invoices."

Incorporating the breach of contract allegations by reference, the count for money had and received alleges "defendants . . . became indebted to plaintiff . . . for money paid and expended to defendants at defendants' insistence and request in excess of $360,000, plus prejudgment interest as of the date of each of plaintiff's payments to defendants."

Defendants demurred to each cause of action on the ground Reiner did not and admittedly could not allege he was actually innocent of the crimes for which he was convicted and that he had obtained postconviction exoneration. Defendants also demurred to the fraud cause of action on the ground the facts allegedly constituting fraud were not pled with sufficient specificity.

The trial court overruled the demurrers on the ground "[this] is not a malpractice action" and therefore *Wiley v. County of San Diego*[3] and its progeny "are inapposite."[4]

Defendants brought this petition for a writ of mandate ordering the trial court to vacate its ruling and issue a new ruling sustaining defendants' demurrers without leave to amend. We issued an order to show cause and stayed further proceedings in the trial court.

### DISCUSSION

Defendants contend a convicted client cannot sue his defense attorneys over a fee dispute unless he alleges in the complaint he was actually innocent of the crime for which he was convicted and has obtained postconviction exoneration. Reiner has not made either allegation with respect to this action.

In support of their demurrer, defendants relied on a trio of cases in which convicted criminal defendants sued their attorneys for legal malpractice: *Wiley v. County of San Diego*,[5] *Coscia v. McKenna & Cuneo*,[6] and *Lynch v. Warwick*.[7]

Under our Supreme Court's opinions in *Wiley* and *Coscia* "[t]he failure to provide competent representation in a . . . criminal case may be the basis for civil liability under a theory of professional negligence" only if the convicted client can establish "actual innocence" and "exoneration by postconviction relief."[8] In *Lynch*, the Court of Appeal held the *Wiley-Coscia* rule applies to any claim for legal malpractice even if the convicted client seeks only contract damages.[9]

The court's holdings in *Wiley* and *Coscia* were based principally on public policy considerations. A requirement of actual innocence prevents those convicted of crime from taking advantage of their own wrongdoing and "shift[ing] much, if not all, of the punishment . . . for their criminal acts to

---

[3] *Wiley v. County of San Diego, supra*, 19 Cal.4th 532.

[4] The trial court also overruled the separate demurrer to the fraud cause of action. We have reviewed the pleading and find it is sufficiently specific as to the fraudulent acts to state a cause of action.

[5] *Wiley v. County of San Diego, supra*, 19 Cal.4th 532.

[6] *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 [108 Cal.Rptr.2d 471, 25 P.3d 670].

[7] *Lynch v. Warwick* (2002) 95 Cal.App.4th 267 [115 Cal.Rptr.2d 391].

[8] *Coscia v. McKenna & Cuneo, supra*, 25 Cal.4th at pages 1199-1200; *Wiley v. County of San Diego, supra*, 19 Cal.4th at page 534.

[9] *Lynch v. Warwick, supra*, 95 Cal.App.4th at page 273.

their former attorneys."[10] Requiring actual innocence and postconviction exoneration also recognizes the fact that "[i]n the criminal malpractice context . . . a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence."[11] In sum, the court concluded, " 'the notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement.' . . ."[12]

The court also identified practical considerations and "pragmatic difficulties" which support a requirement of actual innocence and exoneration. "[A] civil matter lost through an attorney's negligence is lost forever," the court observed. In contrast, a criminal defense lost through an attorney's negligence can be corrected by postconviction relief in the form of an appeal or writ relief.[13] "Pragmatic difficulties" include the difficulty in quantifying damages as, for example, in the case of a defendant whose counsel's incompetence results in a longer sentence[14] and the confusion which would arise when a jury has to decide by a preponderance of the evidence whether, but for the negligence of his attorney, another jury could not have found the client guilty beyond a reasonable doubt.[15] Finally, the requirement for postconviction exoneration protects against inconsistent verdicts and promotes judicial economy by collaterally estopping frivolous malpractice claims in cases where the defendant has already been denied postconviction relief on the basis of ineffective assistance of counsel.[16]

In *Lynch v. Warwick*, Lynch, a convicted criminal defendant, sued Warwick, his former defense counsel, for negligence, breach of contract and breach of fiduciary duty. His complaint alleged he paid Warwick $17,500 to represent him in several criminal matters. Warwick advised Lynch to plead guilty. Lynch rejected this advice, fired Warwick and retained new counsel at an additional cost of $20,000. After the second attorney also advised a guilty plea, Lynch pled guilty to two charges. He then sued Warwick alleging defendant failed to perform the professional services for which he

---

[10]*Wiley v. County of San Diego, supra*, 19 Cal.4th at page 537.

[11]*Wiley v. County of San Diego, supra*, 19 Cal.4th at page 540; see *Coscia v. McKenna & Cuneo, supra*, 25 Cal.4th at page 1201.

[12]*Wiley v. County of San Diego, supra*, 19 Cal.4th at page 539, citation omitted.

[13]*Wiley v. County of San Diego, supra*, 19 Cal.4th at pages 542-543; *Coscia v. McKenna & Cuneo, supra*, 25 Cal.4th at page 1203.

[14]*Wiley v. County of San Diego, supra*, 19 Cal.4th at page 543.

[15]*Wiley v. County of San Diego, supra*, 19 Cal.4th at page 544.

[16]*Coscia v. McKenna & Cuneo, supra*, 25 Cal.4th at page 1204.

was retained. Specifically, the complaint alleged Warwick failed to interview key witnesses, sought unnecessary continuances, failed to prevent the loss or destruction of evidence, failed to establish a relationship of trust and confidence with plaintiff and failed to adequately communicate with plaintiff about the case.[17]

Lynch's breach of contract cause of action sought to recover the $17,500 he had paid to Warwick. The breach of fiduciary duty cause of action sought general and punitive damages. The trial court granted Warwick's motion for summary judgment on the ground Lynch could not show facts establishing his actual innocence. On appeal, Lynch argued the actual innocence requirement should not apply at least insofar as he sought to recover the fees he paid to Warwick because he was not seeking damages for being wrongfully convicted or receiving a longer sentence and the damages he was seeking were " 'quantifiable, out-of-pocket losses.' "[18]

The Court of Appeal rejected Lynch's attempt to avoid the actual innocence requirement. Regardless of how he labeled his causes of action, "Lynch is seeking recovery for legal malpractice."[19] Therefore, even if his damages were limited to out-of-pocket expenses, proof of his case would involve the same public policy considerations and "pragmatic difficulties" which underlie the actual innocence requirement. Lynch's complaint alleged that had Warwick " 'exercised proper care, skill and diligence,' " Lynch " 'would have received a proper or reasonable defense with respect to the underlying criminal charges.' "[20] By claiming Warwick's conduct caused him to lose meritorious defenses Lynch put his guilt or innocence in issue. Moreover, he sought to shift the blame to Warwick for his lack of a meritorious defense rather than accepting his responsibility for having committed the crimes.[21] The court also concluded even if Lynch sought only " 'quantifiable, out-of-pocket losses,' " the trial would involve the same difficulties in proving causation which exist when the plaintiff seeks general damages for wrongful conviction or a longer sentence. In addition, the jury would be faced with the same pragmatic difficulty in applying a preponderance of the evidence standard to issues treated under a reasonable doubt standard.[22]

Finally, the court in *Lynch* noted there is a remedy other than a legal malpractice action through which a former criminal defendant client can

---

[17]*Lynch v. Warwick, supra,* 95 Cal.App.4th at pages 269-270.
[18]*Lynch v. Warwick, supra,* 95 Cal.App.4th at pages 273, 274.
[19]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 273.
[20]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 272.
[21]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 272.
[22]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 274.

recover fees unlawfully collected by defense counsel. The client can seek fee arbitration through the State Bar.[23]

Defendants in the present case urge us to follow the holding in *Lynch* and order the trial court to sustain their demurrers because Reiner's complaint does not allege he was actually innocent of the charges against him and that he has been exonerated by postconviction relief. Reiner, like Lynch, claims he incurred fees for services not performed. Like Lynch, he seeks to recover the fees paid as well as general and punitive damages. And, like Lynch, he cannot prove his claims without producing or refuting evidence bearing on his guilt or innocence. Reiner, like Lynch, has an available remedy against defendants through State Bar arbitration of the fee dispute.

We conclude, however, the present case is distinguishable from *Lynch* and the actual innocence rule does not apply here.

As the court in *Lynch* recognized, the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved.[24] It is clear from the allegations in Lynch's complaint the primary right involved in his suit against Warwick was the right to competent legal representation.[25] It is equally clear from the allegations in Reiner's complaint the primary rights involved in his suit against the defendants are the right to be billed in accordance with the terms of the retainer agreement and the right not to be subjected to unconscionable, fraudulent or otherwise unlawful billing practices.[26]

Although, broadly speaking, it could be said both complaints sought damages for professional services not performed, the professional services not performed by Warwick involved failing to interview key witnesses, failing to preserve evidence, and failing to enforce his client's right to a speedy trial;[27] conduct clearly implicating Warwick's duties of competence and due care in the representation of Lynch on the charges against him. In contrast, the professional services which allegedly were not performed by defendants in the case before us involved not performing the work they claimed they performed, not incurring the costs they claimed they incurred, not using paralegals to perform tasks when appropriate, not confining bills

[23]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 275; see Business and Professions Code section 6200 et seq.

[24]*Lynch v. Warwick, supra,* 95 Cal.App.4th at pages 270, footnote 1, and 273; and see *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 432 [203 Cal.Rptr. 638].

[25]*Lynch v. Warwick, supra,* 95 Cal.App.4th at pages 270, 273.

[26]See pages 421-423, *ante.*

[27]*Lynch v. Warwick, supra,* 95 Cal.App.4th at page 270.

for travel costs to out-of-town travel, and similar nonfeasance which does not implicate defendants' competence and due care in their representation of Reiner on the criminal charges against him. Indeed, Reiner's complaint specifically renounces any claim "defendants' conduct or the quality of defendants' services affected the outcome of the criminal case."

A fee dispute between a convicted criminal defendant client and his former counsel does not entail the policy considerations which arise from a malpractice suit. The client does not seek to shift the punishment for his criminal acts to his former counsel nor is the client's own criminal act the "ultimate source of his predicament" as evidenced by the fact a client *acquitted* of the criminal charges against him could have suffered the same unlawful billing practices as Reiner. Furthermore a fee dispute between client and counsel does not give rise to the practical problems and pragmatic difficulties inherent in a malpractice action brought by a convicted criminal defendant client. In litigation over a fee dispute there is no difficulty in quantifying damages for a wrongful conviction or a longer prison sentence and there is no problem of applying a standard of proof within a standard of proof. A judgment for the client in a fee dispute is not inconsistent with a judgment for the People in the criminal case. And, there is no duplication of effort since a fee dispute obviously cannot be resolved through postconviction relief.

Courts in other states which have adopted the actual innocence rule in criminal malpractice cases have recognized the rule does not automatically apply to every dispute between a convicted client and former counsel. In *Morris v. Margulis*,[28] for example, a convicted criminal defendant sued his former attorneys claiming, among other things, they had breached their fiduciary duty to him by disclosing privileged attorney-client communications to the prosecution. The court concluded applying the actual innocence rule to such a case would be "unconscionable" and held the " 'actual innocence' rule will not be applied to situations where an attorney wilfully or intentionally breaches fiduciary duties he owes to his criminal defense client."[29] In *Labovitz v. Feinberg*,[30] the court reversed a summary judgment in favor of the defendant attorneys involved in a fee dispute with their convicted former client. The plaintiff claimed his fee arrangement with the defendants covered all matters up to an appeal, but in breach of that agreement the defendants refused to represent him on a motion to withdraw

[28]*Morris v. Margulis* (1999) 307 Ill.App.3d 1024 [241 Ill.Dec. 138, 718 N.E.2d 709], reversed on other grounds (2001) 197 Ill.2d 28 [257 Ill.Dec. 656, 754 N.E.2d 314].
[29]*Morris v. Margulis, supra*, 718 N.E.2d at pages 720-721.
[30]*Labovitz v. Feinberg* (1999) 47 Mass.App. 306 [713 N.E.2d 379].

his guilty plea and at his sentencing. As a result, the plaintiff had to retain new counsel to handle the motion and the sentencing hearing, which cost him an additional $15,000 in attorney fees. The court held the actual innocence rule, which barred the plaintiff's malpractice claim, did not bar this breach of contract claim.[31]

Defendants nevertheless contend the actual innocence rule should apply to the present case because Reiner cannot establish his claims without producing or refuting evidence bearing on the quality of the legal services provided and his guilt or innocence of the crimes charged. As examples they point to allegations in the complaint defendants billed Reiner for services not "reasonably required," charged him an "unconscionable fee" and failed to exercise "the utmost care" in representing him in the criminal proceedings. These allegations place directly at issue the quality and necessity of the work performed and the reasonableness of the time expended.

We disagree with most of defendants' characterizations of Reiner's complaint. The allegations defendants billed Reiner for services not "reasonably required" and charged him an "unconscionable fee" are not directed at the *quality* of the work defendants performed but rather to its *quantity* including, among other things, "charging plaintiff for work defendants did not perform; grossly overcharging plaintiff for work they did perform; [and] inflating/padding the time charged to plaintiff . . . ." We fail to see how proof defendants padded costs and billed for work they never performed would involve evidence bearing on the quality and necessity of the work defendants did perform. Furthermore the allegation defendants breached their duty to use "the utmost care" is not directed to the quality of their representation. Rather, the complaint alleges defendants had a duty "to exercise the utmost care" in "their dealings and communications with plaintiff to refrain from deception of any form and to place plaintiff's interests before their own interests."

There are, however, certain allegations in the complaint which appear to implicate the quality of the legal services provided. These are the allegations defendants "grossly overcharg[ed] plaintiff for the work they did perform," "manufactur[ed] work," and "[used] higher-priced attorneys to perform paralegal work."[32] We will order the trial court to strike these allegations from the complaint.

---

[31] *Labovitz v. Feinberg, supra*, 713 N.E.2d at pages 382, 385.

[32] The first two allegations are ambiguous. They could mean defendants' services were not worth what defendants charged for them. If so, proof of the allegations would get into the impermissible area of the quality of defendants' services. They could also mean defendants double-charged for their work, padded their hours, et cetera. If so, these allegations are

There are other allegations in the complaint which might, but not necessarily would, involve evidence going to the quality of defendants' legal services. One such allegation is that defendants "bill[ed] plaintiff for costs that were not incurred 'in performing legal services under this agreement.' " Rather than attempt to identify every such "borderline" allegation we will leave it to the trial court to control the evidence through motions in limine and objections at trial.

Defendants also argue California courts repeatedly have recognized allegations of billing improprieties are claims of legal malpractice. Defendants are incorrect. True, courts have held attorney-client fee disputes and legal malpractice claims fall within the same statute of limitations, Code of Civil Procedure section 340.6.[33] This section applies to actions "against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." But simply because fee disputes and malpractice actions share the same statute of limitations does not mean fee disputes *are* malpractice actions anymore than actions for libel are actions for false imprisonment simply because they share the same statute of limitations. It is one thing to reason "all men are mortal, Socrates is a man, therefore Socrates is mortal" and quite another thing to reason "all women are mortal, Socrates is mortal, therefore Socrates is a woman." Furthermore, even if charging an excessive and unlawful fee could be considered "malpractice" in the broadest sense,[34] it is not the kind of malpractice the Supreme Court had in mind when it adopted the actual innocence rule.[35]

Finally, just as there are important public policy reasons for applying the actual innocence rule to cases involving negligent criminal representation, there are important public policy reasons for not applying the rule to bar cases involving fee disputes between criminal defendant clients and their attorneys.

An attorney owes the client a fiduciary duty " 'of the very highest character.' . . ."[36] This fiduciary duty requires fee agreements and billings

---

specifically pleaded in other parts of the complaint. We believe the allegation concerning the use of paralegals versus lawyers would have to involve evidence regarding the quality of defendants' services.

[33]*Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 803-805 [44 Cal.Rptr.2d 69]; and see *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1368 [12 Cal.Rptr.2d 354].

[34]See *Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276].

[35]See pages 426-427, *ante.*

[36]*Magee v. State Bar* (1962) 58 Cal.2d 423, 430 [24 Cal.Rptr. 839, 374 P.2d 807], citation omitted.

" 'must be fair, reasonable and fully explained to the client.' "[37] No fee agreement "is valid and enforceable without regard to considerations of good conscience, fair dealing, and . . . the eventual effect on the cost to the client."[38] Rule 4-200 (A) of the Rules of Professional Conduct expresses this fiduciary requirement. It states: "A member shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee." The Rules of Professional Conduct "are not only ethical standards to guide the conduct of members of the bar; but they also serve as an expression of public policy to protect the public."[39]

The fiduciary duty to charge only fair, reasonable and consciable fees applies to all members of the bar; criminal defense attorneys are not exempted.[40] Nor to our knowledge does any California statute, rule or court decision expressing an attorney's fiduciary duty to the client with respect to fees limit this duty to clients who are "actually innocent." All clients, even guilty ones, are entitled to the highest degree of fidelity on the part of their counsel.

If only "actually innocent" clients can challenge their defense counsel's excessive or unlawful fees then "actually guilty" clients could never seek redress against even the most unscrupulous attorneys. Moreover, even clients acquitted of the charges against them could not seek redress unless they could prove they were actually innocent of the charges.[41] We can find no rational basis for affording criminal defense attorneys a virtually impregnable shield against suits to recover excessive or unlawful fees. Nor can we find any rational basis for affording civil litigants, no matter how morally blameworthy they may be, a remedy for exactly the same unlawful conduct, double-billing, inflating hours, etc., for which most criminal litigants are denied a remedy.

Defendants, citing *Lynch*, argue criminal defendant clients can take their fee disputes to the State Bar without having to establish actual innocence.[42] We do not believe the dictum in *Lynch* provides a satisfactory answer to the dilemma faced by criminal defendant clients seeking redress in a fee dispute.

---

[37]*Severson & Werson v. Bolinger* (1991) 235 Cal.App.3d 1569, 1572 [1 Cal.Rptr.2d 531].

[38]*Altschul v. Sayble* (1978) 83 Cal.App.3d 153, 162 [147 Cal.Rptr. 716].

[39]*Altschul v. Sayble, supra*, 83 Cal.App.3d at page 163.

[40]The American Bar Association's standards for criminal justice provide: "Defense counsel should not enter into an agreement for, charge, or collect an illegal or unreasonable fee." (ABA Stds. for Criminal Justice (3d ed. 1993) std. 4-3.3(a), p. 153.)

[41]In most cases the difficulty of proving, and the cost of litigating, actual innocence would make fee dispute litigation on behalf of criminal defendant clients impractical.

[42]See *Lynch v. Warwick, supra*, 95 Cal.App.4th at page 275.

If fee disputes are a form of malpractice, as defendants argue, they are not arbitrable by the State Bar.[43] Even if arbitrable, it seems problematic the State Bar could provide a fee dispute remedy without proof of actual innocence after an appellate court has denied the availability of that same remedy when such proof is lacking.[44] On the other hand, if fee disputes are not a form of malpractice then the actual innocence requirement would not be applicable.

For the reasons stated above, we conclude that in a suit by a convicted criminal defendant client against his or her attorney to enforce the primary rights to be billed in accordance with the retainer agreement and to be free from unethical or fraudulent billing practices on the part of defense counsel the client is not required to allege and prove actual innocence of the charged crimes or postconviction exoneration.

DISPOSITION

The order to show cause is discharged. Let a peremptory writ of mandate issue directing the trial court to strike from the first amended complaint at page 4 lines 9 through 11 the words "grossly overcharging plaintiff for the work they did perform" and "manufacturing work not to advance plaintiff's cause but instead solely to increase their fees" and paragraph 16 in its entirety. Each party to bear its own costs on appeal.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied March 17, 2003, and the opinion was modified to read as printed above.

---

[43]Business and Professions Code section 6200, subdivision (b)(2); *Levin v. Graham & James, supra,* 37 Cal.App.4th at page 804, footnote 2.
[44]See *Lynch v. Warwick, supra,* 95 Cal.App.4th at page 280 (dis. opn. of McDonald, J.).