Filed 5/16/23  Hall v. Reed CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MOSES S. HALL, | |
| Plaintiff and Appellant, | G061513 |
| v. | (Super. Ct. No. 30-2021-01216368) |
| KENNETH A. REED, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Moses S. Hall, in pro. per., for Plaintiff and Appellant.

Kenneth A. Reed, in pro. per., for Defendant and Respondent.

\*      \*      \*

**INTRODUCTION**

Plaintiff and former California attorney Moses Hall appeals from a dismissal judgment entered in favor of defendant attorney Kenneth Reed after the trial court sustained without leave to amend Reed's demurrer against Hall's first amended complaint. Hall alleged Reed engaged in misconduct during his representation of Hall in a federal criminal prosecution where Hall pleaded guilty.

Hall alleges that after the federal district court convicted him, it set a hearing date to make a final ruling on the amount of restitution Hall owed to his victims. Hall alleges that Reed subsequently entered into a stipulation with the prosecutor about the restitution amount without Hall's consent or knowledge.

Following failed attempts for relief from the resulting judgment in the federal district court, Hall filed the lawsuit underlying this appeal. It is undisputed that Hall has not secured any postconviction relief. Notwithstanding, Hall contends his civil lawsuit in this matter should have survived Reed's demurrer because its merits should not depend on whether he can plead actual innocence. We conclude Hall has failed to carry his burden to show error in the result of the trial court's dismissal judgment. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A. Guilty Plea and Subsequent Litigation*

We draw the facts from Hall's factual allegations and undisputed portions of the appellate record. According to his plea agreement in his criminal case, "[f]rom 2008 to 2012, [Hall], then a licensed attorney, engaged in a mortgage modification scheme, where he would tell clients that he could help them modify their [home] loans. [Hall] would instruct his victims to stop making their monthly mortgage payments to the bank, and instead to pay him the monthly mortgage payments in a reduced amount that he had calculated, assuring them that he would hold their funds in trust to use to negotiate

2

with the banks to secure a loan modification.  Instead, [Hall] used the money for personal expenditures, or otherwise to support his law practice."

In October 2016, a grand jury indicted Hall on 16 counts of violating federal statutes.  Specifically, Hall was charged with violating:  18 U.S.C. sections 1341 (mail fraud; count 1) and 1343 (wire fraud; counts 2 through 14); 26 U.S.C. section 7212, subdivision (a)(obstruction of a tax proceeding; count 15); and 26 U.S.C. section 7203 (failure to file a tax return; count 16).  The following month, Hall retained Reed to defend Hall in the United States Attorney's Office's criminal prosecution of the indictment.

Eight months later in July 2017, Hall entered a written plea agreement to plead guilty to two of the charged counts:  12 (wire fraud) and 15 (obstruction of a tax proceeding).  Hall's plea agreement included a factual basis for his plea, partially quoted above, and noted Hall had been disbarred by the California State Bar for his conduct.

The plea agreement also discussed, among other points, liability for victim restitution owed.  For example, the agreement stipulated Hall would "make full restitution to the victim(s) of the offenses to which [he was] pleading guilty" and additionally memorialized that, "in return for the [prosecutor]'s compliance with its obligations under th[e] agreement," Hall agreed the federal district court could "order restitution to persons other than the victim(s) of the offenses to which [Hall was] pleading guilty and in amounts greater than those alleged in the counts to which [Hall was] pleading guilty."  Later in the same paragraph, the agreement noted as follows:  "The parties currently believe that the applicable amount of restitution is more than $1,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing."  Hall stresses in this appeal that his plea agreement included the following stipulation:  "Defendant [Hall] and the [prosecutor] reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate."

The federal district court accepted Hall's guilty plea and held a sentencing hearing the following year, in June 2018. The court sentenced Hall to serve 48 months in federal prison and at that time entered an initial judgment ordering restitution in the amount of $252,800 but also a deferred restitution hearing to make a final determination of victim losses. (18 U.S.C. § 3664, subd. (d)(5) ["If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing"].) Hall was ordered to "surrender himself to the institution designed by the Bureau of Prisons at or before 12 noon, August 6, 2018."

The prosecutor subsequently conducted discovery on restitution and, in October 2018, entered a written stipulation with Reed on the total amount of restitution owed by Hall. Specifically, the stipulation stated: "Defense counsel [Reed] has discussed the restitution issue with defendant [Hall] and defendant agrees that the total restitution amount in this case is $1,939,934.65." The stipulation deemed a hearing on restitution unnecessary and, two days later, the court entered an amended judgment ordering restitution to be paid by Hall in the stipulated amount.

The following month, according to Hall's allegations, Reed mailed a letter to Hall in prison that stated in its substantive entirety the following: "Dear Moses: [¶] The issue of restitution is still outstanding on your matter. I recently received discovery (approximately 456 pages) regarding the approximately 75 victims in your case. [¶] I am attaching the excel spread sheet [*sic*] prepared by the State Bar. Their results are: [¶] Restitution amount $349,052.57 [¶] Paid out amount. $150,567.33 [¶] Interest & costs. $1,946.00 [¶] Total of $501,565.90 [¶] Please let me know your thoughts of these numbers[.]"

4

It is undisputed that, despite several attempts, Hall has not secured any postconviction relief from the federal district court's judgment. According to his lawsuit allegations in this matter, in January 2019, Hall filed in the federal district court a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. section 2255. Hall asserted Reed had committed errors on sentencing but did not challenge the October 2018 stipulation to the restitution amount of $1,939,934.65. Hall alleges he filed the motion while unaware of both the stipulation and the district court's resulting amended judgment. Hall asserts that when he filed the January 2019 motion he had relied on Reed's November 2018 letter, quoted above, to understand that the final restitution amount had not been determined.

The federal district court ordered Reed to disclose to the prosecutor Reed's communications with Hall related to sentencing, then ultimately denied Hall's motion in June 2019. Hall also filed a motion to alter or amend the court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (the FRCP) that was denied, as was his motion for reconsideration of the denial.

Hall unsuccessfully appealed the denials to the Ninth Circuit Court of Appeals, also unsuccessfully moved for compassionate release from prison and, in September 2020, moved for relief from judgment pursuant to Rule 60 of the FRCP, which the federal district court denied as a successive motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. section 2255.

*B. Civil Lawsuit Allegations and Demurrers*

This case arrives on appeal after two rounds of demurrers in the Orange County trial court. Hall alleges he discovered the October 2018 restitution stipulation on August 27, 2020, within a year of filing his August 16, 2021 lawsuit in this matter. Hall's initial complaint asserted three causes of action, styled as: (1) legal malpractice; (2) breach of contract; (3) breach of fiduciary duty; and (4) "exemplary damages." Reed

5

filed a demurrer that the trial court sustained with leave to amend, leading to Hall filing a first amended complaint asserting two causes of action: (1) intentional interference with contractual relations and (2) fraud on the court.

Labeling notwithstanding, there is no material difference in the substantive allegations of Hall's two complaint iterations. The essence of his claims is that Reed entered into the October 2018 restitution stipulation without Hall's knowledge or authorization. Reed filed a demurrer to the first amended complaint that the court sustained without leave to amend; judgment in favor of Reed was entered and this appeal followed.

## DISCUSSION

Hall's sole contention on appeal is that he should not be required to show he secured postconviction relief in the federal district court in order to withstand Reed's demurrers. For the reasons discussed below, we decline Hall's invitation to apply an exception to the "actual innocence rule" established by the California Supreme Court in *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 (*Wiley*) and *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 (*Coscia*).

*A. Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) "'[W]e give the complaint a reasonable interpretation,'" and, unless its allegations are refuted by attached exhibits (*Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406) or judicial notice (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6), "we treat the demurrer as an admission by [the] defendant[] of all material facts properly pled in plaintiff['s] complaint—but not logical inferences,

6

contentions, or conclusions of fact or law" (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152).

"'[A]lthough we use a de novo standard of review . . . , we do not transform into a trial court . . . . Instead, the appellant must frame the issues for us, show us where the superior court erred, and provide us with the proper citations to the record and case law.'" (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 404 (*Crawley*); *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 549 [The "[a]ppellant bears the burden of demonstrating that the trial court erred"].)

We affirm or reverse regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "'We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings'" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491) but reverse if a complaint states a cause of action under any possible legal theory (see *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870; see also Code Civ. Proc., § 589 [demurrers raise questions of law].) Finally, where a trial court denied a plaintiff leave to amend a complaint, we review for abuse of discretion and "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)


B. *Relevant Law on Criminal Case Legal Malpractice*

Where a legal malpractice cause of action "arising out of a criminal proceeding" rests on a theory of incompetent lawyering or the guilt or innocence of the client, the elements of the claim are: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and

7

exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; . . . (4) actual loss or damage resulting from the attorney's negligence"; and (5) "actual innocence." (*Coscia, supra*, 25 Cal.4th at pp. 1199-1200, citations omitted.) To establish actual innocence, a client who is a convicted criminal defendant "must obtain reversal of his or her conviction, or other exoneration by postconviction relief . . . ." (*Id.* at p. 1201.)

*C. Analysis*

The parties dispute the scope of the actual innocence rule. In *Wiley, supra*, 19 Cal.4th 532, the California Supreme Court reviewed a case where a jury convicted a man of committing against his former girlfriend battery causing serious bodily injury. (*Id.* at pp. 534-535.) After an initial habeas corpus petition that was unsuccessful, the man obtained habeas relief on a second application and then sued his public defender and the county for malpractice (collectively defendants). (*Id.* at p. 535.) Prior to trial on the malpractice claim, the trial court ruled that the man would not have to prove actual innocence and a jury found in favor of the man and awarded the man damages. (*Ibid*.) The defendants appealed, arguing among other issues that case precedent required the proof of actual innocence. (*Ibid*.) Although the appellate court reversed the civil judgment, it rejected the contention for actual innocence. (*Ibid*.)

The California Supreme Court affirmed the result of the appellate court's judgment but concluded that on remand plaintiff would have to show actual innocence. (*Wiley, supra*, 19 Cal.4th at p. 545.) Specifically, the high court held "that in a criminal malpractice action actual innocence is a necessary element of the plaintiff's cause of action." (*Ibid*.) Then in *Coscia, supra*, 25 Cal.4th 1194, the high court reaffirmed the "unique practical and policy considerations" supporting what is sometimes referred to as the "actual innocence rule" (*Bird, Marella, Boxer & Wolpert v, Superior Court* (2003) 106 Cal.App.4th 419, 428 (*Bird*), concluding "a conviction . . . bars proof of actual

8

innocence in a legal malpractice action." (*Coscia, supra*, 25 Cal.4th at p. 1205 ["a plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case — for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief — as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel"].)

Hall relies on *Bird, supra*, 106 Cal.App.4th 419 to argue that the actual innocence rule should not be applied to his allegations. In *Bird*, the plaintiff alleged his criminal defense lawyers had engaged in fraudulent billing practices in the process of representing the plaintiff. (*Id.* at p. 423.) It was undisputed plaintiff "was convicted of various criminal offenses" in the criminal case underlying his allegations. (*Id.* at p. 421.) The lawyers (and the law firm they worked for during their representation of the plaintiff)[1] demurred on the ground that the plaintiff "could not allege he was actually innocent of the crimes for which he was convicted and that he had obtained postconviction exoneration." (*Id.* at p. 422.) The trial court overruled the demurrers, concluding the case did not constitute "a malpractice action" and was therefore distinguishable from *Wiley* "and its progeny."

The lawyers applied for a writ of mandate by the appellate court ordering the trial court to vacate its ruling and issue a new ruling sustaining the lawyers' demurrers without leave to amend. (*Bird, supra*, 106 Cal.App.4th at p. 424.) Although the appellate court granted a part of the writ application, it held the actual innocence rule should not be applied to the allegations in that case. (*Id.* at p. 427.) The court reasoned the case before it was not legal malpractice action because the plaintiff's "primary rights involved" were "the right to be billed in accordance with the terms of the [parties'] retainer agreement and the right not to be subjected to unconscionable, fraudulent or

---

[1] We do not distinguish between the individuals and the firm and collectively refer to the defendants in that case as the lawyers.

otherwise unlawful billing practices." (*Bird, supra*, 106 Cal.App.4th at p. 427; see *id.* at p. 429 [ordering stricken legal malpractice allegations because they attacked "the quality of the legal services provided"].)

We take no issue with the analysis in *Bird* and its analytical distinction from the traditional application of the actual innocence rule embodied in *Wiley* and *Coscia*. But Hall has not carried his burden to show that *Bird* should compel us to conclude the actual innocence rule is inapplicable to his allegations here. The "fee dispute" at the core of *Bird, supra*, 106 Cal.App.4th at p. 428 implicated issues clearly different from those implicated in this case, which naturally square more with legal malpractice public policy concerns addressed in *Wiley* and *Coscia*. (See, e.g., *Bird, supra*, 106 Cal.App.4th at p. 428 [contrasting fee dispute from malpractice suit by convicted individual: "client does not seek to shift the punishment for his criminal acts to his former counsel"].) This case resembles the malpractice claim analyzed in *Wiley* far more than Hall's characterization of *Bird*. Indeed, Reed has asserted in his respondent's brief that Hall's first amended complaint allegations "still [amount to] a malpractice claim" and Hall has not filed a reply brief. "'We are not bound to develop appellants' arguments for them'" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see *Johnson v. English* (1931) 113 Cal.App. 676, 677 ["[a]ppellant, by failing to file a reply brief, concedes that respondent's position is unassailable"]) so Hall's appeal on the application of *Wiley* and *Coscia* fails most fundamentally on its briefing. (*Crawley, supra*, 243 Cal.App.4th at p. 404.)

*D. Leave to Amend*

In the same vein, Hall has not demonstrated a "reasonable possibility" of showing how he could avoid the application of the actual innocence rule to his allegations through amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318; see, e.g., *Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1091 [discussing elements of fraud cause of action];

10

see also *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 ["In California, fraud must be pled specifically; general and conclusory allegations do not suffice"].)  We hold Hall has not carried his appellate burden to show the trial court abused its discretion in denying leave to amend and file a second amended complaint.  (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

### DISPOSITION

The judgment is affirmed.  Reed is entitled to his costs on appeal.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.

11