Filed 6/27/25  Jamgotchian v. Wagenseller CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JERRY JAMGOTCHIAN et al., | B333376 |
| Plaintiffs and Respondents, | Los Angeles County |
| v. | Super. Ct. No. 22STCV29607 |
| LAINE T. WAGENSELLER et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Klinedinst, Robert G. Harrison and Robert M. Shaughnessy for Defendants and Appellants.

Jeff Lewis Law, Jeffrey Lewis and Kayla R. Dayton for Plaintiffs and Respondents.

————————

Jerry Jamgotchian and two of his companies—El Segundo Plaza Associates L.P. and Theta Holding IV, Inc. (collectively, Jamgotchian)—filed a lawsuit against their former attorneys, Laine T. Wagenseller and Wagenseller Law Firm (together, Wagenseller). Jamgotchian alleged, among other things, that Wagenseller violated his professional and fiduciary duties by withdrawing as counsel without good cause, disclosing confidential information, and interfering with Jamgotchian's efforts to retain new counsel.

Wagenseller filed a motion under California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16).[1] Wagenseller asked the court to strike Jamgotchian's claims to the extent they arose from motions and an ex parte application to withdraw as counsel, which he filed in the prior action. The trial court agreed that the claims arose from protected activity to the extent they were based on the motions and application. However, the court denied Wagenseller's motion after finding Jamgotchian met his burden to show a probability of prevailing. On appeal, Wagenseller argues the court erred because Jamgotchian failed to establish the causation elements of his claims. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The prior action*

In January 2022, Jamgotchian retained Wagenseller to defend him in another action (the Prior Action). Trial was originally set for April 2022, but Wagenseller successfully filed a motion to continue the trial to October 3, 2022.

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise designated.

Jamgotchian signed a fee agreement requiring him to maintain a "replenishing deposit" trust account for fees and costs incurred during the representation. The agreement required Jamgotchian to replenish the funds each month to maintain the initial deposit amount.

Darren Salvin performed the day-to-day legal work on Jamgotchian's case. Salvin was not a partner or associate of Wagenseller's firm. Instead, he provided legal services to the firm as an independent contractor.

Jamgotchian and Wagenseller's relationship deteriorated over time. Jamgotchian questioned Wagenseller's work and billing practices. Wagenseller, in turn, ordered work stopped on Jamgotchian's case at least twice for late payments, and he threatened to withdraw from the case if Jamgotchian did not make timely payments. Jamgotchian ultimately paid the amounts due, and Wagenseller did not withdraw from the case.

In the summer of 2022, Wagenseller informed Jamgotchian he was raising the deposit amount to $50,000. Wagenseller mentioned that Jamgotchian had been "slow" paying the monthly retainer and would do so only after "a lengthy email dialogue."

Jamgotchian responded that a $50,000 deposit was excessive. Jamgotchian noted that Wagenseller had been out of the office for extended periods of time and had essentially turned the case over to Salvin. Jamgotchian also noted Wagenseller was billing him at a rate significantly higher than what he paid Salvin. Jamgotchian suggested Salvin could formally take over the representation, with Wagenseller helping as needed. Salvin, however, told Jamgotchian he would not take over the case from Wagenseller.

On July 19, 2022, Wagenseller informed Jamgotchian he owed a little more than $5,000 in unpaid frees and $20,000 to replenish the deposit account. Jamgotchian replied he did not know what fees Wagenseller was referring to, but his "intentions are and will always be to pay all fees that are approved and due."

On July 22, 2022, Wagenseller sent an email responding to Jamgotchian's earlier suggestion that Salvin take over the case. Wagenseller wrote, "I agree that it is time to sever our relationship and I agree with your proposal to move this case away from Wagenseller Law Firm. The attorney-client relationship has broken down irretrievably. Moreover, you are in breach of the attorney-client retainer agreement." Wagenseller said he would file motions to withdraw "to ensure that the transition [to new counsel] is done promptly." He advised Jamgotchian to retain new counsel and have counsel provide a substitution of attorney form.

Jamgotchian asked Wagenseller not to file the motions to withdraw and instead, to allow Salvin to substitute in as counsel. Jamgotchian accused Wagenseller of threatening Salvin and preventing him from taking over the case. Jamgotchian also asserted Wagenseller was acting in bad faith by moving to withdraw immediately after Jamgotchian pointed out his "unfair billing scheme."

On July 25, 2022, Wagenseller filed three motions to be relieved as counsel, one for each defendant in the Prior Action. The hearings on the motions were set on different days. As grounds for the motions, Wagenseller asserted the client's conduct "renders it unreasonably difficult for the lawyer to carry out the representation effectively" and the client "breached a

material term of an agreement . . . (Client Retainer Agreement; payment of fees)."

The same day—July 25, 2022—Wagenseller filed an ex parte application asking the court either to (1) grant all three motions to be relieved as counsel, or (2) shorten the time for hearing the motions and hear them the same day. He attached to the application a declaration from Salvin and asserted Wagenseller was seeking to withdraw from the case because the "client breached a material term of an agreement with, or obligation, to the lawyer relating to the representation (Client Retainer Agreement; payment of fees)."

The court granted the ex parte application on July 28, 2022. The minute order states, on the "Court's own motion," the court advanced the hearings on each motion to be relieved as counsel, heard the motions, and granted them.

Although the timing is not entirely clear, it appears Jamgotchian filed an opposition to the ex parte application a few minutes after the court issued its order. Jamgotchian argued he had paid all the fees due under the fee agreement and had not taken any actions that would make it unreasonably difficult for Wagenseller to continue to represent him. According to Jamgotchian, he had already paid Wagenseller more than $196,000 in legal fees and costs. Jamgotchian asked the court to require Wagenseller to prepare for the October 3, 2022 trial date and litigate the case to completion.[2]

---

[2] Jamgotchian later filed an ex parte application to reconsider the order granting Wagenseller's application, noting the minute order does not reference his opposition. The court summarily denied Jamgotchian's application.

## 2. *Jamgotchian's complaint against Wagenseller*

In September 2022, Jamgotchian filed a complaint against Wagenseller asserting causes of action for legal malpractice and breach of fiduciary duty. The gist of the complaint is that Wagenseller improperly ended the parties' attorney-client relationship, revealed confidential information in the process, and interfered with Jamgotchian's efforts to retain new counsel and defend himself in the Prior Action.

The complaint lists seven instances in which Wagenseller's provision of legal services both fell below the duty of care and constituted a breach of his fiduciary duties: (1) using pretextual grounds to terminate the relationship; (2) filing an application to withdraw without a basis for doing so; (3) seeking to withdraw on an ex parte basis; (4) disclosing confidential information without consent; (5) failing to take reasonable steps to avoid foreseeable prejudice; (6) interfering with Jamgotchian's efforts to obtain new counsel; and (7) failing to deliver the complete client file. Jamgotchian alleged he suffered damages exceeding $500,000.

## 3. *Wagenseller's anti-SLAPP motion*

Wagenseller filed an anti-SLAPP motion on the grounds that Jamgotchian's claims arise from protected activity and Jamgotchian cannot demonstrate a probability of prevailing. Wagenseller's motion sought to strike all the causes of action in the complaint. However, at oral argument, Wagenseller clarified that he sought to strike only the allegations in the complaint related to the motions and ex parte application to withdraw.

According to Wagenseller's motion, the "gravamen" of Jamgotchian's causes of action concern Wagenseller's "right

6

to petition the court to be relieved as counsel of record" in the Prior Action. Wagenseller argued the "act of filing a motion to withdraw as counsel, as well as the ex parte [application], are classic examples of exercising the constitutional right to petition." Wagenseller asserted Jamgotchian could not demonstrate a probability of prevailing on his claims because he cannot prove causation or damages. He pointed to evidence showing the Prior Action was ongoing, Jamgotchian retained new counsel within days after Wagenseller withdrew, Jamgotchian continued to be represented by Salvin, and the trial in the Prior Action had been continued.

Jamgotchian opposed the motion, arguing his causes of action do not arise from protected activity within the meaning of the anti-SLAPP law. According to Jamgotchian, under well-established California law, the anti-SLAPP statute does not apply to malpractice causes of action brought by a former client. Jamgotchian argued Wagenseller's actions constituting malpractice and breach of fiduciary duty were not protected speech or petitioning activity, and, even if they were, he easily could establish all the elements of his causes of action.

Jamgotchian submitted a declaration in opposition to the anti-SLAPP motion. Jamgotchian asserted he was not in material breach of the fee agreement but, even if he were, he did not receive adequate notice of the breach or an opportunity to cure it. Jamgotchian also asserted he did not consent to Wagenseller's disclosure of the fee dispute in the ex parte application. According to Jamgotchian, the opposing parties in the Prior Action used the existence of the fee dispute successfully to oppose his request to continue the trial.

7

Jamgotchian asserted that, after the court granted the ex parte application, Wagenseller interfered with his efforts to retain new counsel and prepare for trial. According to Jamgotchian, Wagenseller failed to return his entire case file —including three boxes with documents related to his case— which hampered his ability to prepare for trial and forced him to purchase new copies of deposition transcripts. Jamgotchian also asserted his new counsel charged him a "very significant premium" to prepare for trial. Jamgotchian said he ultimately suffered an adverse judgment in the Prior Action that will likely exceed $10 million.

Jamgotchian also submitted a declaration from Salvin. According to Salvin, after the court granted the ex parte application, Wagenseller instructed him not to talk to Jamgotchian "in any way, on any topic, including the location or whereabouts of Wagenseller's complete case file or the complete turnover of the client file." Salvin followed Wagenseller's direction in fear of losing his employment with Wagenseller's firm. Salvin listed the materials that were part of the case file that Wagenseller never returned to Jamgotchian.

### 4. *The court's order*

The court denied Wagenseller's anti-SLAPP motion and declined to impose sanctions on either party. The court explained that, in "evaluating anti-SLAPP motions directed to an entire cause of action or complaint, each allegation of protected activity must be evaluated separately, with the moving defendant bearing the burden of showing that each allegation supporting a claim of recovery is one that rests on protected activity."

The court determined Wagenseller had met his initial burden with respect to claims related to his motions and ex parte

8

application to be relieved as counsel, which constitute protected petitioning activity. However, Jamgotchian's other claims—including claims asserting Wagenseller interfered with his efforts to obtain new counsel and withheld the case file—do not arise from protected activity.

The court then turned to the second step of the analysis and determined Jamgotchian had demonstrated a probability of prevailing on his claims. With respect to the malpractice claims, the court concluded Jamgotchian provided "sufficient evidence of a negligent act or omission, including evidence that Defendant made unauthorized disclosures, interfered with Plaintiffs' efforts to obtain new counsel, and failed to deliver the complete client file." The court also found Jamgotchian presented sufficient evidence of causation and non-speculative damages, including evidence that he had to purchase new transcripts before trial and pay a significant premium to retain new counsel. The court determined the breach of fiduciary duty claims arose out of the same allegations and had sufficient merit for the same reasons.

Wagenseller timely appealed.

## DISCUSSION

Wagenseller contends the trial court erred by denying his motion to strike Jamgotchian's claims under the anti-SLAPP statute. He asserts the court properly determined at the first step of the analysis that Jamgotchian's claims arise from protected activity to the extent they concern his motions and ex parte application to withdraw. However, Wagenseller argues the court erred at the second step of the analysis when it found Jamgotchian showed a probability of prevailing. According to Wagenseller, Jamgotchian failed to meet his burden because he did not present sufficient evidence of causation.

9

1.    ***The anti-SLAPP analysis and standard of review***

The anti-SLAPP statute, section 425.16, establishes a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.) "When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process." (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1543; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

The first step of the anti-SLAPP analysis requires the court to decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon, supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) Section 425.16, subdivision (e), describes four categories of conduct that constitute protected activity. Wagenseller moved to strike Jamgotchian's claims under section 425.16, subdivision (e)(1), which defines protected activity to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right

10

of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) The court must consider the elements of a claim and determine what actions supply those elements and consequently form the basis for the defendant's alleged liability. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*).) Allegations of protected activity that are " 'merely incidental' or 'collateral' " or that "merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*).) "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*City of Cotati*, at p. 79, quoting § 425.16, subd. (b).)

In *Baral*, our Supreme Court resolved a split in authority regarding mixed causes of action—i.e., causes of action alleging protected and unprotected activity—and held an anti-SLAPP motion may be used to strike discrete allegations of protected activity without defeating an entire cause of action. (*Baral, supra*, 1 Cal.5th at pp. 392–393.) Under *Baral*, "[w]hen relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded" in conducting the first prong analysis, and the trial court then must determine whether "relief is sought based on allegations arising from activity protected by the statute." (*Id*. at p. 396.) If the targeted allegations "amount to a 'cause of action' in the sense that [they are] alleged to justify a remedy," those allegations are properly subject to a special motion to strike, even though they may be mixed with allegations of unprotected activity in a single cause of action. (*Id*. at p. 395.) The critical question is whether

11

"allegations of protected activity . . . are asserted as grounds for relief." (*Ibid.*, italics omitted.)

If the court finds the defendant has made the threshold showing, the analysis proceeds to the second step, under which the court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon, supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) To establish the requisite probability of prevailing, the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.)

We independently review the trial court's ruling on an anti-SLAPP motion under the de novo standard. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

## 2. *Wagenseller met his burden to show Jamgotchian's claims arise from protected activity*

Wagenseller contends Jamgotchian's claims arise from protected activity to the extent they are premised on his motions and ex parte application to withdraw. The motions and application plainly qualify under the anti-SLAPP statute's definition of protected activity, which includes "any written or oral statement or writing made before a . . . judicial proceeding." (§ 425.16(e)(1).) Therefore, the only question is whether Jamgotchian's claims arise from those motions and application for purposes of the anti-SLAPP statute.

To decide that issue, we first consider the elements of Jamgotchian's claims. (See *Park, supra*, 2 Cal.5th at p. 1063.) "In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 (*Coscia*).) The elements of breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (*Stanley*).)

As we understand Jamgotchian's claims, he alleges Wagenseller violated his professional and fiduciary duties by seeking to withdraw without good cause, using the wrong procedure to do so (an ex parte application), and revealing confidential information in the process. These claims rely on Wagenseller's act of filing the motions and application to withdraw—as well as the information he chose to include in them—to establish the "breach of duty" elements of his legal malpractice and breach of fiduciary duty causes of action. The claims rely on the motions and application to establish Wagenseller's liability. Therefore, they arise from the motions and application for purposes of the anti-SLAPP statute. Because the motions and application constitute protected activity under the statute's plain language (§ 425.16, subd. (e)(1)), Wagenseller has met his initial burden.

13

Jamgotchian contends his claims do not arise from protected activity because they involve claims against an attorney by a former client.[3] As Jamgotchian notes, courts have repeatedly held "garden-variety attorney malpractice" claims are not subject to the anti-SLAPP statute, even if they arise out of the attorney's statements and writings made before a judicial proceeding. (See, e.g., *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 632; *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158 (*Thayer*); *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 313 (*Wittenberg*); *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 (*Kolar*); *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 504; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227 (*PrediWave*); see also *Benasra v. Mitchell Silberberg &*

---

[3] We reject Wagenseller's contention that Jamgotchian cannot raise this issue because he did not file an appeal or cross-appeal. Although the court rejected Jamgotchian's arguments at the first step of the anti-SLAPP analysis, it ultimately ruled in his favor. Therefore, there were no grounds for Jamgotchian to appeal. (See *Nevada County Office of Education v. Riles* (1983) 149 Cal.App.3d 767, 779 ["if the judgment or order is in favor of a party he is not aggrieved and cannot appeal"].) Moreover, "[n]o rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329.) Accordingly, Jamgotchian is free to argue alternative grounds on which we may affirm the order, including arguments concerning the first step of the anti-SLAPP analysis. (See § 906.)

14

*Knupp LLP* (2004) 123 Cal.App.4th 1179, 1181 [the anti-SLAPP statute does not apply to claims alleging an attorney's breach of the duty of loyalty].)

Although courts have given various reasons for excluding malpractice claims from the anti-SLAPP statue, one of the primary justifications is that those claims do "not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect." (*Kolar, supra*, 145 Cal.App.4th at p. 1540.) As one court put it, "[a]lthough a broad interpretation of the anti-SLAPP statute is statutorily mandated (see § 425.16, subd. (a)), an overly broad interpretation of section 425.16, subdivision (b), that includes such client lawsuits unreasonably expands the language beyond the clear legislative purpose and leads to absurd results." (*PrediWave, supra*, 179 Cal.App.4th at p. 1228.)

However, not all claims against attorneys brought by former clients fall outside the anti-SLAPP statute. In *PrediWave*, the court identified three general categories of claims against attorneys: "(1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients'

15

causes of action against attorneys." (*PrediWave, supra*, 179 Cal.App.4th at p. 1227.) "[O]nly the 'first class' of claims— those brought by former clients against their former attorneys based on the attorneys' acts on behalf of those clients—may not be within the ambit of SLAPP. The other kinds of actions —'(2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys'—are." (*Thayer, supra*, 207 Cal.App.4th at p. 158; see *Wittenberg, supra*, 50 Cal.App.5th at p. 313 ["only the first category of cases may be outside the ambit of the anti-SLAPP law"].)

Here, Jamgotchian does not bring the sort of "garden-variety" malpractice claims that courts have excluded from the anti-SLAPP statute. In a garden-variety malpractice claim, the attorney's liability arises out of actions taken on the plaintiff's behalf. (See *PrediWave, supra*, 179 Cal.App.4th at p. 1227.) However, where an attorney moves to withdraw without the client's consent—as Wagenseller allegedly did here— the attorney effectively is acting on his own behalf, not on behalf of the client. (See *Kirsch v. Duryea* (1978) 21 Cal.3d 303, 311 (*Kirsch*) [when an "attorney seeks to withdraw without consent of [the] client, there is an obvious inference his withdrawal is not for the client's purpose but for the attorney's purpose"].)

Jamgotchian's claims instead more closely resemble those falling under the second *PrediWave* category, which arise out of an attorney's actions taken on behalf of another client. (*PrediWave, supra*, 179 Cal.App.4th at p. 1227.) Here, Wagenseller was acting on his own behalf, not on behalf of another client. Nevertheless, we do not find this distinction to be meaningful. What differentiates claims falling under

16

the second *PrediWave* category from the first—and what justifies applying the anti-SLAPP statute to the former but not the latter—is the fact that the attorney is acting on behalf of someone other than the plaintiff. (*Ibid*.) Whether that someone is another client or the attorney himself, the threat of a lawsuit has the same sort of " 'chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute.' " (*Id*. at pp. 1221–1222.)

Given the potential chilling effect of Jamgotchian's claims, we reject his contention that they fall outside the scope of the anti-SLAPP statute. Wagenseller's motions and ex parte application constitute protected activity under the statute's plain language, which expressly applies to "any written or oral statement or writing made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) Because Jamgotchian's claims arise from that activity, Wagenseller has met his burden at the first step of the anti-SLAPP analysis.

### 3. *Jamgotchian met his burden to show a probability of prevailing*

Because Wagenseller met his burden to show the claims arise from protected activity, the burden shifts to Jamgotchian to show a probability of prevailing. To satisfy that burden, Jamgotchian must show only that his claims have "minimal merit." (See *Navellier, supra*, 29 Cal.4th at p. 89.) That is, he must make a prima facie showing as to each element of his claims. (See *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) In general terms, the elements of legal malpractice and breach of fiduciary duty are the same: (1) the existence of a duty, (2) a breach of that duty,

17

and (3) damages caused by the breach. (See *Coscia, supra*, 25 Cal.4th at p. 1199; *Stanley, supra*, 35 Cal.App.4th at p. 1086.)

As to the first element, the parties do not dispute that Wagenseller owed professional and fiduciary duties to Jamgotchian when he moved to withdraw as counsel. It is a "long-accepted standard of professional conduct" that an attorney may not withdraw from representation " 'until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to [the] client all papers and property to which the client is entitled, and complying with applicable laws and rules.' " (*Kirsch, supra*, 21 Cal.3d at p. 310.) These duties are codified in the Rules of Professional Conduct, which state a lawyer may not terminate representation "until the lawyer has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, such as giving the client sufficient notice to permit the client to retain other counsel." (Rules Prof. Conduct, rule 1.16(d).)

The Rules of Professional Conduct also list the circumstances under which an attorney may withdraw from representation. As relevant here, the rules permit a lawyer to withdraw if the client "renders it unreasonably difficult for the lawyer to carry out the representation effectively," or the client breaches a "material term" of an agreement. (Rules Prof. Conduct, rule 1.16(b)(4), (5).) By stating the circumstances under which an attorney may withdraw, the rules imply an attorney may not withdraw for other reasons. (See *In re J.W.* (2002) 29 Cal.4th 200, 209 ["the expression of one thing in a statute ordinarily implies the exclusion of other things"].) Moreover, during the process of withdrawing, the California

18

Rules of Court preclude a lawyer from revealing information "compromising the confidentiality of the attorney-client relationship." (Cal. Rules of Court, rule 3.1362(c).)

Jamgotchian presented sufficient evidence showing Wagenseller breached these duties when he filed the motions and application to withdraw. Wagenseller's motions and application stated—or at least implied—that he was withdrawing, in part, because Jamgotchian had breached the parties' fee agreement. According to Jamgotchian, he did not consent to Wagenseller disclosing the existence of their fee dispute. Therefore, a reasonable trier of fact could conclude Wagenseller's reference to the dispute in public filings constituted a breach of his duty not to disclose confidential information compromising the confidentiality of the attorney-client relationship. (See Cal. Rules of Court, rule 3.1362(c).)

A reasonable trier of fact also could conclude Wagenseller moved to withdraw without good cause. The record shows Jamgotchian maintained a good working relationship with Salvin —who was the primary attorney working on his case—up until Wagenseller withdrew from the case. There also is evidence that the amount of unpaid fees was relatively small, Jamgotchian intended to pay them, and Wagenseller had accepted late payment in the past. On this record, a reasonable trier of fact could conclude Wagenseller's purported reasons for terminating the relationship—Jamgotchian's breach of the fee agreement and a breakdown in the attorney-client relationship—were either pretextual or insufficient to warrant withdrawal. In either case, a trier of fact could conclude Wagenseller violated his duty not to withdraw without good cause. (See Rules Prof. Conduct, rule 1.16(b).)

19

There also is evidence that Wagenseller withdrew from the case under circumstances prejudicial to Jamgotchian. The record shows Wagenseller moved to withdraw fewer than three months before the trial date and only a few days after informing Jamgotchian of his intentions. Wagenseller then filed an ex parte application seeking expedited rulings on his motions. On this record, a reasonable trier of fact could conclude Wagenseller provided insufficient notice to permit Jamgotchian to retain other counsel and prepare for trial, in violation of his duty to take reasonable steps to avoid foreseeable prejudice to his client. (See Rules Prof. Conduct, rule 1.16(d); *Kirsch, supra*, 21 Cal.3d at p. 310.)

Wagenseller does not meaningfully contest that Jamgotchian presented sufficient evidence showing he breached his professional and fiduciary duties.[4] Nevertheless, he contends Jamgotchian failed to present evidence that those breaches caused him to suffer damages. Wagenseller points specifically to the lack of evidence that Jamgotchian would have obtained a more favorable judgment in the Prior Action had Wagenseller not withdrawn as counsel. According to Wagenseller, absent such evidence, Jamgotchian cannot make out a malpractice claim.

We agree that Jamgotchian failed to present sufficient evidence showing Wagenseller's actions caused him to suffer

---

[4] In passing, Wagenseller contends there was nothing procedurally improper about the ex parte application or the court's ruling on it. While that may be true generally, a reasonable trier of fact could conclude Wagenseller's decision to file an ex parte application seeking to expedite the withdrawal was improper under the particular circumstances of this case.

a worse judgment. However, contrary to Wagenseller's suggestions, Jamgotchian is not limited to recovering that type of damages. Our Supreme Court has explained the "determination of actual injury [in an attorney malpractice case] does not necessarily depend upon or require some form of final adjudication, as by judgment or settlement." (*Adams v. Paul* (1995) 11 Cal.4th 583, 591.) Instead, "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Budd v. Nixen* (1971) 6 Cal.3d 195, 201.) Moreover, "attorney fees incurred as a direct result of another's tort are recoverable damages." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) Therefore, in an attorney malpractice action, a plaintiff may recover fees paid to "his second attorney[ ] to the extent that such fees compensated that attorney for his efforts to extricate plaintiff from the effect of defendant's negligence." (*Budd*, at p. 202; see *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1060 ["fees paid to a second attorney to correct errors committed by the first attorney represent damages"].)

Here, Jamgotchian presented evidence that he incurred expenses to extricate himself from the effects of Wagenseller's alleged torts. (See *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180–181 [legal malpractice gives rise to an action in tort]; *Stanley*, *supra*, 35 Cal.App.4th at p. 1086 ["breach of fiduciary duty is a species of tort"].) Specifically, Jamgotchian asserted in his declaration that, because Wagenseller withdrew from the case only a few months before the trial date, he had to pay a "very significant premium" to retain new counsel to represent him. Jamgotchian also

21

asserted he had to purchase new copies of transcripts that Wagenseller failed to return when he withdrew from the case. Jamgotchian would not have had to incur those expenses had Wagenseller not withdrawn from the case. Therefore, if a trier of fact concludes the withdrawal was wrongful, Jamgotchian would be entitled to recover those expenses.

Jamgotchian also presented evidence that he suffered damages caused by Wagenseller's disclosure of confidential information. According to Jamgotchian's declaration, the opposing parties in the Prior Action used the existence of the fee dispute successfully to oppose his application to continue the trial date. After retaining new counsel, Jamgotchian then had to expend attorney fees to file a motion to continue. A trier of fact reasonably could conclude that, but for Wagenseller's disclosure of the fee dispute in his ex parte application, the court would have granted Jamgotchian's initial application. If so, Jamgotchian would not have had to incur attorney fees to file the subsequent motion.

We reject Wagenseller's contention that Jamgotchian alone is responsible for any damages caused by the disclosure of confidential information. According to Wagenseller, Jamgotchian's injuries were "self-inflicted" because the ex parte application revealed the existence of the fee dispute in the most general terms, while Jamgotchian's opposition revealed detailed information about the nature of the parties' dispute. To determine whose disclosure ultimately caused the damages would require us to weigh the evidence and resolve factual disputes, which we decline to do in connection with an

anti-SLAPP motion.  (See *Park, supra*, 2 Cal.5th at p. 1067.)
It is enough that Jamgotchian presented sufficient evidence
from which a reasonable trier of fact could find in his favor.

      We also reject Wagenseller's contention that Jamgotchian
cannot show damages because it is undisputed he retained
new counsel, new counsel successfully moved to continue the
trial, and Salvin substituted into the case for trial.  Wagenseller
overlooks evidence showing Jamgotchian had to pay new counsel
a premium and incurred attorney fees in connection with the
motion to continue trial.  A reasonable trier of fact could conclude
that, but for Wagenseller's alleged breaches, Jamgotchian
would not have had to incur those expenses.  While far from
overwhelming, Jamgotchian presented sufficient evidence
to establish the minimal merit required to survive an
anti-SLAPP motion to strike.

## DISPOSITION

We affirm the order denying Wagenseller's anti-SLAPP motion.  Jamgotchian shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


ADAMS, J.